| 20  673<br>| 81   41

---

BARTON PECK v. MARY T. HENSLEY AND OTHERS.

See this case as to a covenant of good right to convey, where the granting part
of the deed only purports to convey all the right and title of the grantor.

According to the modern doctrine, it was not necessary that there should have
been an actual eviction, to entitle the plaintiff (the grantee of the defendant)
to sue for a breach of covenant.

The grantee might yield the possession to a title which he was satisfied must
ultimately prevail, without losing his remedy on his covenants. But if he does
so, it is at his peril; and in his suit against his covenantor, he must assume the
burden of proof, and rely upon, and make out, the adverse title to which he
has yielded.

A decree, against the vendor of the plaintiff's vendor, for specific performance
of an agreement to convey, purporting to be of anterior date, in a suit to
which it is not shown that plaintiff's vendor was a party, and which he is not
shown to have had any notice to defend, is not sufficient to establish, *prima
facie*, the right of the plaintiff to a recovery on his vendor's covenant of war-
ranty; and should be withdrawn from the jury, if not followed by evidence to
establish such anterior agreement to convey, and its validity as against the
title conveyed to plaintiff.

Appeal from Calhoun.    Tried below before the Hon. Fielding
Jones.

Suit by Barton Peck, appellant, against Mary T. Hensley,
widow of W. R. Hensley, deceased, and others, heirs of said W.
R. Hensley, on a covenant of warranty, in a conveyance from
said W. R. Hensley and his said wife, of a half league of land,
situated in Colorado county and originally granted to John H.
Dabney. The conveyance was on the 26th Sept. 1841. And
plaintiff averred an eviction in 1854, under a paramount title,
and by legal process. Defendants denied all and singular, &c.
    43

At the trial plaintiff gave in evidence the following deed :—

REPUBLIC OF TEXAS, *County of Jackson.*

Know all men by these presents, that we, William R. Hensley and Mary T. Hensley his wife, have, for and in consideration of the sum of three thousand three hundred and thirty dollars, to us in hand paid, the receipt whereof is hereby acknowledged and full acquittance given, sold, bargained, aliened, conveyed and transferred, and do hereby sell, bargain, alienate, convey and transfer, unto Barton Peck, his heirs and assigns, forever, all our right, title, claim, interest and demand, of, in, and to, the south half of a sitio of land, (to be divided from the north half, by a line running due east and west,) to which we are entitled by purchase of John H. Dabney and wife, being the south, or lower half, of the sitio of land granted to John H. Dabney, as a colonist under Stephen F. Austin, as will fully appear by reference to the records and a deed deposited in the archives of Colorado county, in which county said land lies. We hereby declare that we have good and full power so to sell and dispose of the said tract of land, as aforesaid, and we hereby fully bind ourselves, our heirs, executors or administrators, to warrant and forever defend, unto the said Barton Peck, his heirs and assigns, forever, all our right, title, claim, interest and demand, of the said premises, forever, against the just claims of all persons whatsoever, either in law or equity. Given under our hands and seals, in presence of subscribing witnesses, this twenty-sixth day of September, A. D. one thousand eight hundred and forty-one.

Said deed was recorded December 3d, 1841, in Colorado county.

Plaintiff then offered in evidence a transcript of the record of a suit in the District Court of Colorado county, wherein Wiley Jones, by guardian, was plaintiff, and Eliza Dabney and others were defendants, which was objected to by defendants, on the ground that it was irrelevant, and that defendants not being parties thereto, were not bound by the decree, which objections were overruled by the Court, and defendants excepted. Plaintiff then read said transcript in evidence. It was as follows :—

Spring Term, 1847. State of Texas, county of Colorado. Wiley Jones, by guardian, Randall Jones, v. Eliza Dabney et al. This day came the parties by their attorneys, and thereupon came a jury, who being impanelled, and sworn, to wit : (here followed the names of the jurors) who being elected, tried and

sworn to try the issue joined, returned into Court the following verdict, to wit: We, the jury, find for the plaintiff, Wiley Jones, and find that he is the legatee of Wiley Martin, and that the land mentioned in the plaintiff's petition is his property. Angus McNeil, Foreman. And this case coming on to be heard on the petition and answers of the several defendants, and the exhibits filed in the cause by the plaintiff, and this cause being submitted to the jury, it was proven that John H. Dabney, in his lifetime, bound himself by a public act, dated the 16th January, 1833, to one-half league of land, being the one-half of said Dabney's headright, as a colonist, being the southern half of said league, which said league is situated on two branches of Scull Creek, and bounded on the west by League No. 3, on the left bank of the Vandall, belonging to James Bowie; the said half has the following lines and boundaries: (Here followed a description of the boundaries, and the decree then continued.) It was proven that the said Martin, by his last will and testament, bequeathed said half league of land to Wiley Jones, son of Randall Jones. And the jury having found for the plaintiff, that the half league in question was the property of the plaintiff: It is therefore ordered, adjudged and decreed by the court that the said half league of land, as above described, is the property of the plaintiff, Wiley Jones, and that he recover the same; that all right and title of the widow and heirs of said Dabney, deceased, be and the same is hereby divested, and that said Wiley Jones be, and he is by this decree, put in legal possession of said half league of land; that this decree shall operate as a complete and perfect legal conveyance of the fee simple, right and title of said land, and that plaintiff recover his costs as prayed for in his petition.

It was admitted that the said Wiley Jones took possession of said half league of land, in 1854, by virtue of said decree, the possession being then vacant.

Defendants then read in evidence the deed from John H. Dabney and Eliza, his wife, to W. R. Hensley. It was dated March 2d, 1840; conveyed all the right, title, claim, &c., of the grantors; warranted against all persons claiming under them; and declared that they had good right and full power to sell, &c. It recited that the league was granted to said Dabney as his headright on the 19th November, 1832. This deed was recorded on the 2d of April, 1840, in Colorado county. Defendants then rested, and moved the Court to withdraw from the jury, the transcript of the decree in Colorado county; plaintiff objected;

the objection was overruled, and the said evidence withdrawn; to which ruling plaintiff excepted.

Verdict and judgment for the defendants. Motion for new trial overruled, &c.

*S. A. White*, for appellant.

*A. S. Cunningham and J. J. Holt*, for appellee. I. The deed is but a release of the grantor's interest in the land, to the grantee. (Raw. on Covenants, 488 to 496, also 518 and 19.)

II. The record was properly excluded. The defendants were not parties to said suit. They had no notice, and consequently could not be affected by it. Were we to admit that the covenant of warranty was a general covenant for title, the plaintiff was bound to show that he had been evicted by a paramount title. (Raw. on Covenants, 263 and 4.) From the recitals in the deeds and record, it appears that the title upon which the plaintiff in said record recovered, was void; the conveyance having been made to him at a time when the grantee, Dabney, was prohibited from selling.

WHEELER, J. It is insisted for the appellees, that as the deed from Hensley and wife to the plaintiff, purports to convey only such right as the grantors had in the land, the covenants are qualified and limited by the grant; and consequently that the covenant of good right to convey must be taken to mean a power to convey only such right as the grantors had. In support of this position we are referred to the case of Allen v. Holton, (20 Pick. R. 458,) which does seem to favor the position contended for. The grant in that case was of "all my right, title and interest in and unto the ferry called, &c., and the boat which I built, and now use in carrying on the ferry, and all the estate, land and buildings thereon," with covenants of ownership and general warranty; and it was held that the deed purported to convey only such right as the grantor had, and that the covenants had reference to the grant, and were limited by it; that it was not a deed of warranty, but a quit claim deed. The case of Moore v. Magrath is referred to by the Court, as a strong case to show to what extent a Court may go, in qualifying and even rejecting a particular clause in a deed, in order to effectuate the intention of the parties. There the lands, intended to be granted,

were particularly named in the preamble, and were afterwards minutely described in the premises; and then followed a sweeping clause, purporting to convey "all other the donor's lands, tenements and hereditaments in Ireland." The Court held that nothing passed by this sweeping clause; being of opinion, from the words of the preamble, that the donor did not intend to include his paternal estate, (which was situated in a different county,) and that it was more than probable that the conveyancer by mistake omitted some words in that clause.

There is no doubt that a recital, or a preamble, in a deed may qualify the generality of the words of a covenant or other parts of a deed, where they manifest an intention different from the import of the general words. Every deed is to be construed according to the intention of the parties as manifested by the entire instrument, although it may not comport with the language of a particular part of it; with the qualification, perhaps, that where a particular construction has been given to a certain covenant, in doubtful cases, the intention of the parties will, to a certain extent, be referable to that construction. (Id. 463; Rawle on Cov. 81.) Looking to the intention of the parties, as manifested by the words of the deed, I am inclined to the opinion that it was the intention of the grantors to do more than give a mere quit claim deed, in this instance; and to covenant, as the words import, that they had good right to convey the land described in the deed. They refer to the grant from the Government to their grantor, and his conveyance to themselves, showing a perfect chain of title from the Government; and then follows the covenant in question, as a conclusion from the facts to which they have referred. The especial reference to the evidences of their right would seem to manifest the intention to covenant that they had the right to convey the land. Upon the opposite supposition the clause is nugatory.

But it is not essential to determine this question positively; for if the true construction of the deed is such as we have supposed, and as it must be held, to enable the plaintiff to maintain his action, still we are of opinion that upon the evidence he was not entitled to recover, and that judgment was therefore rightly rendered for the defendant.

According to the modern doctrine, it was not necessary that there should have been an actual eviction, to entitle the plaintiff to sue for a breach of covenant. He might yield the possession to a title which he was satisfied must ultimately prevail, without

losing his remedy or his covenants. But if· he assumed the responsibility of determining upon the chances of its success, and chose to yield to the adverse title, he did so at his peril ; and in his suit against his covenanter he must assume the burden of proof, and rely upon and make out the adverse title to which he has yielded. (Rawle on Covenants, 263.) The proof on which he relies to establish a superior adverse title is the judgment of the District Court of Colorado county. That appears to be a decree for the specific performance of a contract to make title, made by the original grantee in 1833. It simply decrees the title of the grantee to be in the plaintiff in that suit. It may have been, and probably was, an amicable suit between the plaintiff therein and the heirs of the original grantee. Such seems the probable inference from the recitals in the decree. It does not establish any right of possession adverse to the present plaintiff. The defendant was not a party to that suit, nor does he appear to have had notice of it. The decree amounts to no more than a conveyance by the heirs, of the title of the grantee, to the plaintiff in that suit ; and it does not relieve the plaintiff in this suit from the burden of proving that it was properly rendered, and that it constitutes a title superior to that of his vendor. (Ib.) If properly rendered, as between the parties to it, it does not appear that the contract upon which it was rendered was ever recorded, or that the defendant had notice of it, actual or constructive, at the time of his purchase. His deed was recorded; so was that of his vendee, the plaintiff; and in the absence of notice of the adverse title, or contract to make title, the plaintiff's title is superior to that, and in an action of trespass to try title must prevail against it. The judgment was properly admitted in evidence, to lay the foundation for other evidence to establish a paramount adverse title ; but, in the absence of other evidence, it did not amount to proof of such title. When, therefore, the plaintiff failed to produce other evidence, it was properly excluded, as affording no sufficient evidence in itself to entitle the plaintiff to recover. There is therefore no error in the judgment, and it is affirmed.

Judgment affirmed.