### ELMORE et al. v. SAULNIER et al. (No. 585.)

(Court of Civil Appeals of Texas. Beaumont. July 2, 1921. Rehearing Denied Oct. 12, 1921.)

1. Husband and wife ⬤⟳267(8)—Presumption property acquired during coverture is community property not rebuttable by parol evidence.

Under a deed conveying a life estate in lands with remainder in fee to grantee's children, two of whom were married women, there being nothing in the deed to indicate that the grantees of the fee were not citizens of Texas, holding under the marital laws thereof, the presumption that the remainder in fee so acquired during coverture was community property cannot be rebutted by parol evidence in an action against bona fide purchasers from their husbands.

2. Vendor and purchaser ⬤⟳224 — Deed held not a quitclaim as respects claim of innocent purchase.

A covenant in a deed that grantors "have a good right to sell and convey," since it evidences the parties' intention to convey the land itself, and not merely grantors' title, must prevail over words in the granting clause that grantors "do hereby quitclaim * * * all their right, title, claim, and interest," the use of term "quitclaim" not being conclusive; hence the contention that the deed was a mere quitclaim and did not sustain the claim of innocent purchase by grantees was untenable.

Appeal from District Court, Harris County; Lewis R. Bryan, Special Judge.

Action by Harriett Ann Elmore and others against Ada C. Saulnier and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

Pritchett Harvey and M. G. Fakes, both of Houston, for appellants.

B. F. Louis, Sam, Bradley & Fogle, E. P. & Otis K. Hamblen, Tharp & Tharp, and C. C. Highsmith, all of Houston, for appellees.

WALKER, J. This was a suit in trespass to try title. The appellants, plaintiffs below, claimed the land in controversy as the heirs of one Julia Elmore. The appellees, defendants below, claimed that they and those under whom they hold were bona fide purchasers for a valuable consideration without notice of the claim of appellants, if any they had. On a trial to the court without a jury judgment was rendered for appellees. We have before us the trial court's conclusions of fact and law, but no statement of facts. The land in controversy was patented by the state of Texas to Ashbel Smith on the 15th day of December, 1845. On December 12, 1846, he conveyed it by the following deed:

"Ashbel Smith, for the consideration of three hundred dollars paid in hand and being a part of the price of the slave, Abram, sold to him, doth bargain, sell, and convey to Mary Emmerson and Joseph Emmerson, her husband, the following described tract of land situated in Harris county, in Texas, at the head of the east fork of White Oak bayou, about five miles north of the city of Houston: [Then follows field notes.] To have and to hold said land and its appurtenances to said Mary and Joseph Emmerson for and during their joint lives, and upon the death of said Mary, then the said land is to accrue to and be vested in, and is hereby bargained, sold, and conveyed unto, Julia Elmore, wife of William Elmore, Cath-

erine Ward, wife of Thomas Ward, Lewis H. Cannon, John Q. Cannon, Samuel Cannon and Joseph J. J. Weaver, their heirs and assigns, forever in fee simple absolute; and the said Ashbel Smith will warrant and forever defend the said land and appurtenances against the right, title, claim, and demand of all and singular persons whatsoever.

"Witness my hand and seal this 12th day of December, A. D. 1846.

"Ashbel Smith. [Seal.]"

After the death of Mary Emmerson and her husband, the remaining grantees, who were her children, conveyed the land to J. J. J. Weaver, who was a tenant in common with them under the Smith deed, by the following deed:

"This indenture made and entered into this the 3d day of March, one thousand eight hundred and seventy, between W. E. Elmore and Julia F. Elmore, of the county of Obion and state of Tennessee, Thomas M. Ward, Mary C. Ward, Lewis H. Cannon, J. Q. Cannon, and Samuel Cannon, of the county of Shelby and state of Tennessee, of the first part, and Joseph J. J. Weaver, of the county of Shelby and state of Tennessee, of the second part, witnesseth: That the parties of the first part, for the consideration of one dollar to them in hand paid, the receipt of which is hereby acknowledged, do hereby quitclaim to the party of the second part, his heirs and assigns forever, all their right, title, claim and interest of whatsoever nature in and to the following described tract of land, situated and being in the county of Harris, state of Texas, at the head of the east fork of White Oak bayou, about five (5) miles north of the city of Houston, described as follows, to wit: [Here follows field notes.] To have and to hold to him, the said party of the second part, his heirs and representatives, forever; and we, the said parties of the first part, do covenant to and with the party of the second part that we have a good right to sell and convey the same to him.

"In testimony whereof the parties of the first part have hereunto set their hands and affixed their seals the day and year above written."

[1] This deed was duly acknowledged by all the men who signed it, but the acknowledgments of the married women were fatally defective. Hence it did not pass their separate interest in this land, if any they had. This is the contention of appellants, who, as we have said, claim as heirs of Julia Elmore. Some of the acknowledgments to this deed refer to it as a "quitclaim." Appellants contend that Julia Elmore and Catherine Ward held the interest in the land conveyed to them by Ashbel Smith as their separate property, and that the facts found by the court show conclusively that it was their separate property. We shall not review the facts on that issue; for, as we construe the deeds above set out, the presumption that it was the community property of Julia Elmore and

Catherine Ward and their husbands cannot be rebutted by parol evidence. We believe that this presumption arises on the terms of the Ashbel Smith deed. Julia Elmore and Catherine Ward were married at the time this deed was executed and delivered to them. There is nothing in the deed to indicate that the grantees were not citizens of Texas. There is nothing in this deed to give notice to a subsequent purchaser that they were not holding this land under the marital laws of Texas, making it a part of the community estate of these women and their husbands. As said by our Supreme Court in Wallace & Co. v. Campbell, 54 Tex. 87:

"It has long been settled by this court that property acquired during coverture, by purchase or apparent onerous title, whether the conveyance be in the name of the husband or wife, or both, will be presumed to be community property, and that as to bona fide purchasers from the husband for a valuable consideration, without notice, this presumption cannot be rebutted by parol evidence that it is the separate property of the wife."

[2] The defendants deraign their title through J. J. J. Weaver, and as to Weaver's grantees the trial court found that they held under warranty deeds and were bona fide purchasers for a valuable consideration and without notice of the claim now asserted by appellees.

The correctness of this conclusion of the trial court rests on the character of the deed executed to J. J. J. Weaver by his cotenants. If it is a deed conveying him the land, and not a mere conveyance of the title of the grantor, the presumption that the land was a part of the community property of Julia Elmore and Catherine Ward and their husbands is conclusive. Of course, if this instrument is a mere quitclaim deed, it cannot sustain the defense of innocent purchaser, and the appellants should be permitted to show the actual status of the property.

The proper construction of this deed has been a matter of deep concern to us. After a careful examination of all available authorities, we have concluded that it is a deed, and that it was the purpose of the grantors to convey the land itself, and not merely their title to the land. We recognize that it has many of the characteristics of a quitclaim deed, but none of the terms used are conclusive of that construction. In Moore v. Swift, 29 Tex. Civ. App. 51, 67 S. W. 1065, Judge Gill thus discussed a granting clause very similar to this one:

"Against this is the fact that in the conveying clause the grantors undertook to convey only their right, title, and interest. But this does not necessarily militate against the construction adopted by the trial court. To the instrument in question there were six grantors. They

conveyed as heirs of the decedent, Jane Mast. Their interests were doubtless undivided, and it was not especially significant of a purpose to 'convey only a chance of title that they used the words 'all our and each of our right, title, claim, and interest,' " etc.

In Cook v. Smith, 107 Tex. 119, 174 S. W. 1094, 3 A. L. R. 940, Judge Phillips said:

"The use of the term 'quitclaim' is not, of itself, a conclusive test of its character. It may make use of that term and yet have the effect of a conveyance of the property."

So in construing this deed, as all other written instruments, we must examine it in its entirety and give it that construction which, as a whole, its terms import. The concluding covenant, "and we, the said parties of the first part, do covenant to and with the party of the second part that we have a good right to sell and convey the same to him," was deliberately used by the grantors. Unless it enlarges the granting clause, we must reject it as surplusage, thus convicting the parties to this deed of doing an idle thing. If we give the clause its plain import, it is an express covenant on the part of the grantors that they had a good right to sell and convey this land to Weaver. This could only mean that they owned the land and were selling it to him. This declaration on their part must prevail over a technical construction of the words used in the granting clause. It evidences the intention of the parties to convey the land itself, and not merely their title to the land, and, when that intention has been ascertained, it must prevail and determine the character of the instrument.

Discussing a similar covenant, in Barton Peck v. Hensley, 20 Tex. 673, to wit:

"We hereby declare that we have good and full power so to sell and dispose of said tract of land, as aforesaid"

—our Supreme Court said:

"Looking to the intention of the parties, as manifested by the words of the deed, I am inclined to the opinion that it was the intention of the grantors to do more than give a mere quitclaim deed in this instance, and to covenant, as the words import, that they had good right to convey the land described in the deed."

What we have said in our discussion of the two deeds above copied disposes of all of appellants' assignments of error, except those attacking the findings on limitation in favor of some of the defendants. If we are correct in our construction of these deeds, these findings become immaterial.

Believing that the trial court gave these deeds their proper construction, this case is in all things affirmed.

⊜☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes