HEIRS OF EDWARD ROBERTS v. JOHN L. LOVEJOY.

(Case No. 1374.)

1. VENDOR AND VENDEE.— If the vendor of land, after default made in payment of purchase money, elects to sue for the purchase money instead of disaffirming the contract of sale, he thereby affirms the contract of sale as still in force; the result of the suit is to determine the amount of unpaid purchase money, and the judgment rendered is *res adjudicata* as to the right of parties or privies to disaffirm the contract and all other questions involved in the contract of sale. This rule applies to judgments rendered for unpaid purchase money by justices of the peace.
2. SAME.— The purchaser of land under an executory contract is entitled to have the same specifically performed, as far as the vendor can perform, and to have an abatement out of the purchase money, or compensation for any deficiency in the title, quantity, quality, description, or other matters touching the estate. See statement and opinion for a case to which it was held this doctrine applied.

APPEAL from Collin. Tried below before the Hon. R. R. Gaines.

March 24, 1857, Lovejoy sued William Davis for a specific enforcement of a bond for title, made by Davis to Edward Roberts, and dated March 21, 1849, which obligated Davis to make title to sixty acres of land therein described as soon as a patent issued to Davis. Lovejoy claimed to have purchased all Roberts' interest in the land, soon after its date, and that the patent had issued to Davis.

Davis answered, admitting the execution of the bond, and, among other things, that other bonds were outstanding and not canceled. That he was ready and willing to make the deed when the former

bond was canceled according to the understanding of the parties, etc.

April 17, 1857, Roberts intervened, claiming that in the sale of the land to Lovejoy the latter paid him $90 of the purchase money and agreed to pay him the balance, $85. That he sued Lovejoy before a justice of the peace in 1850, for that amount, with interest, and that Lovejoy pleaded the statute of frauds and other defenses, and upon the trial judgment was rendered against him and in favor of Lovejoy. That an assignment he made and delivered to Lovejoy pending the suit was made and delivered as an escrow, only to take effect upon Lovejoy's paying him the balance of the purchase money. That Lovejoy refused to pay the money, and thereby repudiated the contract of sale. That subsequently he (Roberts) had conveyed part of the land to another by warranty deed.

To this Lovejoy replied by amended petition, etc., that the sale from Roberts to him was verbal, and that Roberts pointed out to him the land on the smooth prairie and represented that as the land he was then selling, but that in truth and in fact the land described in the Davis bond did not include any part of the land pointed out, which was then worth from $2 to $5 per acre, but that it was situated further north and was low hog-wallowed and brush land, not worth more than fifty cents per acre at the time; and that the amount he paid at the time of the sale was more than the full value of the land.

For additional statement reference is made to Roberts v. Lovejoy, 25 Tex. Sup., 437; Roberts v. Lovejoy, 28 Tex., 641; Lovejoy v. Roberts, 35 Tex., 605.

Upon the trial the evidence showed that after Lovejoy had answered in the justice court, asserting the statute of frauds and the misrepresentation as to the description, etc., of the land, Roberts made and delivered to him what is called the assignment (but which conveys all Roberts' right, title, interest and claim in the *land*). That thereafter the parties went to trial upon Lovejoy's answer setting up the misrepresentation of Roberts, and that he had already paid more than the value of the land, and the judgment of the justice was in favor of Lovejoy for costs. There was no evidence that the instrument was delivered as an escrow.

Upon the last trial, which was had before the court, judgment was rendered in favor of Lovejoy, decreeing a specific performance of the bond and for costs, etc.

*John C. Easton,* for appellants.

WATTS, J. COM. APP.— This cause has been pending for nearly twenty-seven years, and this is the fourth time that it has been before the supreme court. In the consideration of the questions involved, to a certain extent, the court is embarrassed by the former and seemingly conflicting decisions of the court on the former appeals. How far the record now before the court may differ from that before it when these former decisions were made, we have no means of as- certaining, except from the statement given by the reporter. Beset with these difficulties, it is the duty of the court to pass upon and determine the questions presented by this record from the best light attainable, considering that any seeming conflict between the for- mer opinions of the court in the case, and the principles of law and equity here applied, is, to some extent, attributable to differences in the several records.

Here the first question for consideration is, what effect does the final judgment in the justice court have upon the rights of the par- ties in this suit? All the authorities concur in the proposition that in executory contracts for the sale of land, if the vendee makes de- fault in the payment of the purchase money, the vendor may elect either to consider the default in payment a disaffirmance of the con- tract, and recover the land, or else sue for the purchase money. And if the vendor pursues the latter remedy, the result is generally con- sidered tantamount to a decree for specific performance, as thereby the contract of sale is affirmed as in force, and all questions ordina- rily requisite to secure a decree for specific performance are deter- mined in that proceeding. That is, the existence of the contract of sale is affirmed, and the amount of the unpaid purchase money, if any, is determined. Roeder v. Robson, 20 Tex., 765. For, the vendor having selected his remedy and forum, and having litigated the question as to the purchase money to a final judgment before a court of competent jurisdiction, he will not be allowed, as between him and the vendee, to again assert and have litigated the same questions previously litigated by the parties and determined by a definitive judgment. Such matters are considered *res adjudicata;* that is, as between the parties and their privies, in the absence of fraud and mistake in the judgment, conclusively settled. This doctrine applies as well to adjudications and final judgments of courts of justices of the peace as to those of any other court.

In the suit of Roberts v. Lovejoy the justice of the peace had jurisdiction both of the subject matter and the parties, and the result of that adjudication was that Lovejoy did not owe Roberts any- thing on the land. Now, notwithstanding that adjudication and final

judgment, Roberts, in his intervention in this suit, reasserts the very same matter against Lovejoy, and on that ground alone he seeks to defeat Lovejoy's suit against Davis. Roberts' attitude in this case is that of a volunteer. He thrusts himself between the parties, and says that Davis ought not to be compelled to make the deed, for that Lovejoy owed him a part of the purchase money and had refused to pay it. That, it must be remembered, was the identical question determined by the judgment of the justice court against him. And so far as he is concerned, it would seem that the judgment of the justice court ought to conclude him from again asserting that claim.

If the case in the justice court had been tried and determined upon the naked legal defense of the statute of frauds, then it would not preclude Roberts from showing that the result of the litigation was in effect a repudiation of the purchase, and a rescission of the contract of sale at the instance of Lovejoy. For in such case the very question tried and determined would furnish ample evidence of the repudiation of the contract of sale by Lovejoy. But the question of the statute of frauds was eliminated from the case by the conveyance made by Roberts and accepted by Lovejoy. And the adjudication was had upon the *just* and *equitable* defense of a partial failure of consideration, presented in such manner as to negative the idea that Lovejoy intended by making that defense to repudiate the contract of sale.

In his petition Lovejoy sets up the bond, its assignment to him by Roberts, and that the patent had issued to Davis. The establishment of these allegations by competent evidence would entitle Lovejoy to a specific performance by Davis. Now the only way in which the matter between Roberts and Lovejoy gets into the case is through the intervention of the former, who seeks to establish by the proceedings had in the justice court that Lovejoy had repudiated and forfeited the contract of sale. The proceedings in the justice court, it seems to us, do not establish that fact. But when that proceeding is considered in connection with the conveyance by Roberts to Lovejoy of all his right, title and interest in and to the land described in the bond, the conclusion seems irresistible that the parties intended that the contract of sale should remain in force between them. The effect of the conveyance was to vest absolutely and unconditionally all Roberts' interest in and to the land in Lovejoy.

True, it is alleged in Roberts' petition of intervention, that this conveyance was made and delivered to Lovejoy as an escrow, to take effect only upon condition that Lovejoy paid him the amount

claimed as balance of the purchase money on the land. There is no evidence in the record establishing these allegations. On the contrary, the evidence does show that the conveyance was made and delivered to avoid the effect of the statute of frauds, and to place Roberts in a position to contest the defense asserted by Lovejoy of misrepresentations and consequent partial failure of consideration, and to recover, if he could, the purchase money claimed by him and not the land.

Suppose that instead of the proceedings in justice court, the patent had issued to Davis prior to that time, and Lovejoy had brought suit against Davis for a specific performance and made Roberts a party, alleging the facts with reference to his purchases from the latter, and had supported these allegations by ample evidence, not controverted, would not the court have decreed a specific performance against Davis, and, upon the doctrine of compensation, abated the unpaid purchase money in favor of Lovejoy?

Judge Story, in his work on Equity Jurisprudence, vol. 1, § 779, gives the rule in the following language: "The general rule (for it is not universal) in all such cases is that the purchaser, if he chooses, is entitled to have the contract specifically performed, as far as the vendor can perform it, and to have an abatement out of the purchase money or compensation for any deficiency in the title, quantity, quality, description or other matters touching the estate."

Mr. Waterman, in his work on Specific Performance of Contracts, § 499, asserts the same doctrine, and adds: "Where, in the first of the cases supposed, the vendor is plaintiff, the court will be cautious in granting him the relief asked and enforcing performance by an unwilling purchaser; and it will not do it unless the purchaser can be placed in a condition as favorable substantially as if the contract had been fully carried out. On the other hand, if the purchaser chooses to accept less than he contracted for, there can be no good reason why he should not compel the vendor to perform, as far as he is able, with compensation for the deficiency."

In Austin v. Ewell, 25 Tex. Sup., 403, the doctrine as stated above is fully recognized and applied.

As to the application of that doctrine to the case before us, there is not uniformity of opinion, but a majority believe that it is applicable. The contrary opinion is based upon the theory that as Roberts pointed out to Lovejoy an entirely distinct and separate parcel of land from that described in the bond from Davis, that therefore the minds of parties did not meet and there is no contract; and that Roberts might not have been willing to have sold the land

described in the bond for what might then be considered its actual value. That to specifically enforce that as a contract would be to make a contract for the parties that they did not make for themselves, and then force them to accept it by judicial decree.

There is no doctrine better settled in this character of suits than that courts cannot and will never undertake to make contracts for parties. Their utmost power is to either enforce in whole or in part, or to rescind and annul, such contract as the parties may make for themselves.

Here it should be remembered that Roberts only owned or claimed to own on the Davis survey the sixty acres of land described in the bond from Davis to him. That this was the land about which he and Lovejoy were contracting and did contract. But Lovejoy was deceived as to what particular portion of the Davis survey was included in the bond. And by reason of that misrepresentation Lovejoy was induced to agree to pay much more than the land that was included in the bond was then worth, and much more than he would have contracted to pay had he known the true locality of the land.

Now, whether Roberts knew at the time that his statements were untrue, or whether he was himself mistaken as to the matter, is immaterial; for the same result would attach. In either event it is a fraud upon Lovejoy.

To hold, then, that when the purchaser has been deceived in part, let it be ever so considerable, as to the locality of the land, that he has his election either to rescind or to secure an enforcement of the contract in part with compensation or abatement, but that where the vendor goes farther into the dark regions of fraud, and entirely deceives the purchaser as to the true locality of the land described in the instrument which evidences the contract, that this places the purchaser at a disadvantage by forcing him to accept but one of the remedies, to wit, to rescind the contract and recover back his purchase money with interest, thus giving to the fraudulent vendor the land with the speculation in its increased value, would result in offering a premium to those who commit the most aggravated frauds. Such a result could not be tolerated by a court of equity, in whose nostrils the stench becomes more foul in proportion to the extent and palpability of the fraud. The agreement of the vendor is to convey the land described in the bond, and to that extent it becomes the contract of the parties, if not before, at least when the vendee elects to take it with a just and equitable abatement. From the facts and circumstances in evidence it may be inferred the basis of the agreement was the actual value of the land. And that would

seem to be a just rule to apply in determining the compensation or abatement.

In this case these questions are obviated by reason of the conveyance from Roberts to Lovejoy, and the circumstances under which it was made and delivered.

In reply to Roberts' suit for the purchase money Lovejoy asserted, first, the statute of frauds; and secondly, the misrepresentations, and claimed that he had paid the full value of the land. The conveyance was made, it seems, for the purpose of obviating the statute of frauds, and to put Roberts in a position to contest the answer setting up the misrepresentations. And throughout that case, it seems that the averments in the answer as to the actual value of the land described in the bond were never controverted by him. Then it appears to us the rule furnished by the parties themselves for compensation or abatement would be the actual value of the land at the time of sale.

Some importance has been attached to the fact that since the adjudication in justice court Roberts had conveyed a portion of the land by deed of general warranty. But it must be remembered that he did so with full knowledge of the fact that judgment against him was final, and his conveyance to Lovejoy of all his right, title, interest and claim to the land was then upon record; and besides, it may be inferred from the record that Lovejoy and those claiming under him have had the control and possession of the land during the time.

Under these circumstances his subsequent sale and warranty of title could not be converted into equities in his favor and against Lovejoy.

We report for an affirmance of the judgment.

AFFIRMED.

[Opinion adopted October 30, 1883.]