BORDAGES et al. v. STANOLIND OIL
& GAS CO. et al.

No. 10620.

Court of Civil Appeals of Texas. Galveston.

Nov. 10, 1938.

Rehearing Denied June 15, 1939.

788

Armstrong, Cranford, Barker & Bedford, of Galveston, and Wm. T. McNeill, J. Paul. McNeill, and A. M. Huffman, all of Beaumont, for appellants.

T. J. Arnold, of Houston, for Republic Production Co.

Sam W. Levy, of Houston, for Howard Boyles, W. Howard Lee, F. N. Bullock, Consolidated Royalties Co. and Geo. Hamman.

Turner, Rodgers & Winn and F. J. Scurlock, all of Dallas (Clay Tallman and L. A. Thompson, Jr., both of Tulsa, Okl., of counsel), for Stanolind Oil & Gas Co.

Howell & Howell, of Beaumont, for Mrs. Margaret A. Thomson, Cornelia Howell, Leon Howell, Nora Sutton, K. E. Sutton, and Fisk Thomson.

· T. L. Foster, of Dallas, and Chas. F. Heidrick and Joiner Cartwright, both of Beaumont, for Sun Oil Co.

John E. Green, Jr., John Broughton, Archie D. Gray, and Robert F. Carter, all of Houston, for Gulf Oil Corporation.

Maco Stewart, of Galveston, for Maco Stewart and Gus Loustalot.

CODY, Justice.

This suit was brought by appellants to recover from appellees, in trespass to try title, an undivided interest in about 40 acres in the south part of Lot No. 1 of the Martin Dunman Survey in Galveston County, and to recover from one of the appellees damages in the sum of $138,750 for oil produced and removed therefrom.

The numerous appellees filed separate answers, pleading for the most part general demurrers, general denials, "not guilty", the three, five, ten, and twenty-five year statutes of limitation; and two of the appellees pleaded in addition, improvements and development made in good faith.

From a judgment rendered for appellees against appellants on an instructed verdict, appellants have appealed.

Appellants, who are about seventy-five of the descendants of John Hamshire, seek to recover in this case, in virtue of his apparently outstanding interest in Lot No. .1, aforesaid.

In August, 1845, the Martin Dunman Survey was patented to Martin Dunman. Upon his death it was partitioned; lot No. 1 of such survey was awarded to Wm. Reeves and wife, Sarah, who was a daughter of Martin Dunman and wife, Elizabeth Dunman. Thereafter, and on April 11, 1857, Elizabeth Dunman, widow of the patentee, married John Hamshire. Then, on September 15, 1858, Wm. Reeves and wife, Sarah, conveyed to Elizabeth Hamshire, Lot No. 1 that had been partitioned to Sarah, and in this deed John Hamshire was not mentioned, and Elizabeth Hamshire was described, sic, "(formerly Mrs. Elizabeth Dunman)". This conveyance was not expressed as being made to Elizabeth Hamshire as her separate property. Such property therefore presumptively became the community property of Elizabeth and John Hamshire. He had no children of his union with Elizabeth Hamshire, formerly Dunman. He died intestate in 1872, and left surviving him several children by a former marriage, from whom appellants are descended. Thereafter, and on September 21, 1876, Elizabeth Hamshire conveyed Lot No. 1 of the Martin Dunman Survey, by a deed which is in part copied hereinafter, to Louisa Cronea. Louisa Cronea and her husband, Charles, moved on the tract (of 200 acres, which included the 40 acres in controversy), and they or their children and persons claiming directly

under them have been in possession of part or all of this Cronea tract since 1876. One of the Cronea children lived on a part of the 200 acre tract continuously from 1876 until about two years before the filing of this suit, and her children are still living there. By mesne conveyances the appellees hold under Louisa Cronea and her husband, Charles.

The undisputed facts show that the John Hamshire heirs all live in the vicinity of this property; one of them was the wife of the surveyor that partitioned the property among the Cronea heirs, and lived there as a tenant of the Croneas. Appellants have never paid taxes on the property, and the present suit, brought after oil had been discovered and produced from the property, is the first time any of them have asserted any claim to it. The 40 acres in controversy is in low marshy land next to the Gulf, and appears not to have been actually occupied or enclosed. But the deed from Elizabeth Hamshire to Louisa Cronea, dated as aforesaid September 21, 1876, and in virtue of which the Croneas went into possession of the entire tract as stated, includes such 40 acres, and was filed for record in the deed records of Galveston County, October 27, 1876.

■■■ We have been unable to see why the possession and use of at least portions of the 200 acre tract, conveyed to Louisa Cronea by Elizabeth Hamshire, by Louisa Cronea and her husband, and by their children after them, under and by virtue of such deed of conveyance, was not an adverse holding of all the land within the boundary of such deed. Hodges v. Ross, 6 Tex.Civ.App. 437, 25 S.W. 975, writ of error refused, 93 Tex. 709; par. 98 of Article on Adverse Possession. Vol. 2, pages 183 et seq., Tex.Jur. The record of the deed, accompanied by inclosure and use of a part of the land, was notice to the Hamshire heirs of a hostile claim to all the tract, inclusive of the 40 acres. If the heirs of John Hamshire could be said to be cotenants of Elizabeth Hamshire then it can be said that it is "a familiar rule in this state that where one tenant in common executes a deed purporting to convey the entire premises to a third person, who enters into possession thereof, claiming title to the whole, this will constitute a disseizin of the cotenants and after the expiration of the statutory period will bar the right of the cotenants to recover." McBurney v. Knox, Tex.Com.App., 273

S.W. 819, 821. Again, "when it does appear that the tenant is in actual possession, asserting an exclusive right to property under a deed or deeds conveying to him by specific description the property in controversy, and his cotenants in common know of the existence of such deeds, and there exist circumstances that show that the one so holding is claiming by virtue of such deeds, his possession will be considered in keeping with the title under which he claims, and will be regarded as adverse to the title of his cotenants." Puckett v. McDaniel, 8 Tex.Civ.App. 630, 28 S.W. 360, 362. The deed from Elizabeth Hamshire to Louisa Cronea was as follows:

"Know all men by these presents: That I, Mrs. Elizabeth Hamshire widow of the late John Hamshire, and formerly the widow of Martin Dunman, decd. of said State and County party of the first part in consideration of a conveyance this day made by Charles Cronea and his wife Louisa A. Cronea, to H. M. Powell of a certain tract of land out of the Burwell Franks Survey on Bolivar Peninsular"— (here follows description of the exchanged land)—"have granted, bargained and sold unto the said Mrs. Louisa A. Cronea, wife of Charles Cronea, he consenting thereto party of the second part her heirs and assigns forever, two hundred acres of land on Bolivar Peninsular in the County of Galveston, State of Texas, described as follows: One Hundred and forty seven & eight tenths (147-8/10) acres of land part of the Martin Dunman Survey on High Island and conveyed to me the said Mrs. Elizabeth Hamshire by William Reeves and wife Sarah Reeves by deed dated February 15th, 1858, and beginning at a stake on the Gulf shore 1275 vs. N. 67 E. from the S.W. corner of survey No. 16 made for Martin Dunman. Thence N. 23 deg. W. 2617-½ vs. to a stake for the N.W. corner. Thence N. 67 Deg. E. 318-¾ varas to a stake for the N.E. corner. Thence S. 23 deg. E. 2617-½ vs. to a stake for S.E. corner. Thence S. 67 deg. W. 318-¾ vs. to the beginning, with the Houses and improvements thereon."—(here follows description of an adjoining fifty-two and two-tenths acres)— and then follows the Habendum and General Warranty Clauses.

Though appellees have not undertaken to support the action of the trial court in instructing a verdict in their favor on the ground that the operation of the statutes of limitation have barred the rights of ap-

pellants, we confess that on the face of the record we fail to see why it is not so sustainable: We do not, however, sustain the instructed verdict on this ground. We assume that, contrary to what seems to us to appear from the record, that appellees failed to establish, as a matter of law, the facts necessary to bar appellants' rights under operation of the statutes of limitation.

The first contention of appellants is that when they proved up their heirship in relation to John Hamshire, and proved up that the land was conveyed to Elizabeth Hamshire during her marriage to John Hamshire, and not conveyed to her as her separate property, they made out a prima facie case, entitling them to recover their respective proportions of his presumptive community interest. Appellants admit that under their contention Elizabeth Hamshire took the entire legal title to the property, citing Martinez v. De Barroso, Tex.Civ. App., 189 S.W. 740; and therefore further admit that the most his heirs can claim is his presumptive equitable community interest in the property. They frankly concede that in a suit by heirs, in such case, against a purchaser of the legal title, the burden is upon them to show that such purchaser, and those holding under him, had notice or were charged with notice of the outstanding title, citing Elliott v. Wallace, Tex.Com.App., 59 S.W.2d 109; Duckworth v. Collie, Tex.Civ.App., 235 S.W. 924. They contend, however, that this burden was discharged by the recitals which appear in the deed to Elizabeth Hamshire from her son-in-law and daughter, coupled with the recitals which appear in the deed from her to Louisa Cronea. That is, such recitals, they contend, charged appellees with notice that Elizabeth Hamshire was married to John Hamshire at the time she acquired title to the land. Being so charged with notice that Elizabeth Hamshire acquired the property while married to John Hamshire, they contend that purchasers of such estate were bound to use reasonable diligence to investigate whether John Hamshire left children surviving him, and, as his surviving children (by a previous marriage) resided in the vicinity where the land was located, such an investigation would have disclosed such children and heirs.

Assuming for the moment that the recitals in the deed are sufficient to give subsequent purchasers of the land notice that John Hamshire owned an equitable community interest therein, then, by the same parity of reasoning, such recitals must likewise have constituted means by which appellants could have themselves known of the existence of their presumptive interest in such land—Hill v. Moore, 85 Tex. 335, 19 S.W. 162. It is not pretended that appellees have been guilty of any act of concealment in connection with this matter, affirmative or negative, so such recitals appearing in the public records were constructive notice to appellants of their presumptive interest in the land. Hines v. Thorn, 57 Tex. 98, 104. Appellants remained passive while appellees, or some of them, incurred the expense of prospecting for, and discovering, oil. "It is generally accepted that the doctrine of laches is, not like limitation, a mere matter of time, but principally a question of the inequity of permitting a claim to be enforced; this inequity being founded on some change in the condition or relations of the property or the parties." Brady v. Garrett, Tex.Civ. App., 66 S.W.2d 502, 504; Huffington v. Doughtie et al., Tex.Civ.App., 113 S.W.2d 343, 347. Therefore it seems to us that if the recitals in the deeds which appellants contend should be held to be sufficient to put appellees on notice of their presumptive interest, they must likewise be held sufficient to convict appellants of laches which would prevent a court of equity from enforcing an equitable estate upon the legal owners. Here appellants, and their predecessors in interest, have stood by for sixty years and asserted no claim, and have permitted the legal owners to expend sums necessary to discover and develop oil, and we are unable to persuade ourselves that, had appellees' speculation turned out unsuccessful, appellants would even now be asserting any claim. Therefore their claim should, it seems to us, be barred by their laches. And the defense of laches was available to appellees under their pleas of not guilty. Mayes v. Manning, 73 Tex. 43, 11 S.W. 136; Montgomery v. Noyes, 73 Tex. 203, 11 S.W. 138, 139.

However, we do not believe that the recitals referred to were sufficient to put the purchaser from Elizabeth Hamshire, or those holding under such purchaser, on notice of an outstanding equitable community interest in the heirs of John Hamshire. Gilmer's Estate v. Veatch, 102 Tex. 384, 117 S.W. 430; Griggs v. Houston Oil Co., Tex.Com.App., 213 S.W. 261; Turner v. California Co., 5 Cir., 54 F.2d 552; Moore v. Humble Oil & Refining Co., Tex.

Civ.App., 85 S.W.2d 943, writ of error refused; Clayborn v. Gambill, Tex.Civ. App., 87 S.W.2d 508. We are able to distinguish this case from those cited by appellants in this connection.

Furthermore, we believe that every fact necessary to sustain the presumption of a grant of this land having been made by the ancestor of appellants is shown by the evidence. "It is not necessary to such finding that the evidence satisfies the mind of the court or jury that the grant was made. It is sufficient if the evidence leads to the conclusion that a conveyance might have been executed and that its existence would explain and account for the long claim and assertion of ownership on the one side and the acquiescence on the other." Fowler v. Texas Exploration Co., Tex.Civ. App., 290 S.W. 818, 819, 823, writ of error refused; Fletcher v. Fuller, 120 U.S. 534, 7 S.Ct. 667, 30 L.Ed. 759; De Ramirez v. De Ramirez, Tex.Civ.App., 29 S.W.2d 872.

And in connection with the point relative to the presumption of a grant, it may not be amiss to state that, from an examination of the deeds in which the recitals relied upon by appellants occur, such words therein as "formerly" and "peninsular" are misspelled. From this it might be inferred that the deeds may not have been drawn by a member of a learned profession. We are not authorized, of course, to assume that the draftsman of the deed to Elizabeth Hamshire from her daughter and son-in-law was ignorant of the fact that, unless it were made to appear on the face of the deed that the land was conveyed to the grantee as her separate property, the presumption arose that it was conveyed to her as the community property of herself and husband,—a presumption that would remain rebuttable, of course, so long as the parties to it, or other witnesses that might know the facts, lived. But it certainly does not lessen the force of the applicability of the doctrine of a presumed grant where, as here, the interest which is asserted in conflict with such presumed grant does, itself, rest entirely upon a presumption—the presumption that where Elizabeth Hamshire was named as grantee, without any qualifying words, the intention was to convey to her unnamed husband as well as to herself. This presumption was rebuttable. And the fact that it was treated as being contrary to the truth for sixty years, lends credence to the view that it could have been rebutted at an earlier date.

At least, as against this presumption, we may legitimately presume a grant from John Hamshire to his wife, Elizabeth Hamshire, or to some other of appellees' predecessors in title, merely from the principle and for the purpose of quieting title. "The owners of property, especially if it be valuable and available, do not often allow it to remain in the quiet and unquestioned enjoyment of others. Such a course is not in accordance with the ordinary conduct of men. When, therefore, possession and use are long continued, they create a presumption of lawful origin; that is, they are founded upon such instruments and proceedings as in law would pass the right to the possession and use of the property", etc. Fletcher v. Fuller, supra [120 U.S. 534, 7 S.Ct. 673].

For the reasons given, the judgment is ordered affirmed.

Affirmed.

MONTEITH, J., participating as Special Commissioner.

### On Motion for Rehearing.

CODY, Justice.

Though the cases of Mayes v. Manning and Montgomery v. Noyes which we cited and relied on in our former opinion have not been expressly overruled by the Supreme Court, they have been, we have concluded, repudiated. "In suits for recovery of land it matters not whether the title asserted by the plaintiff be legal or equitable; if he has title sufficient to sustain an action of trespass to try title as distinguished from a mere equity which would entitle him to acquire title, his right of recovery will be barred only by adverse occupancy in the manner and for the length of time prescribed by the statutes of limitation relating to suits for the recovery of land." Loomis v. Cobb, Tex.Civ.App., 159 S.W. 305, 309, writ of error refused; also the authorities there cited. As appellants have a presumptive equitable title, as distinguished from a mere right to entitle them to acquire title, we were in error in holding that their demand was subject to the doctrine of stale demand.

We erred, also, we believe, in holding that the court was authorized as a matter of law to find a lost grant to sustain appellees' title. The strength of the presumption of a lost grant where a party has been undisturbed in his possession for

a great while has been increasing, and its rebuttable character has been steadily receding in the opinion of bench and bar, but such presumption still remains merely a presumptio juris—one for the jury to draw, and not a presumptio juris et de jure, one for the court to draw as a matter of law. Of course, if under the facts proved, reasonable minds could reach no other conclusion but that the long continued and undisturbed possession could be explained only on the presumption of a. lost grant, then the court could presume same as a matter of law, or instruct the jury ·to find such presumption. No doubt, the justification for presuming a lost grant is always the same. Men seldom have rights of value which are unknown to them, and it happens more seldom still, if possible, that they will suffer themselves to be deprived of the enjoyment of such rights for thirty years or more. It is much more reasonable to conclude, after those who know the facts are dead, that the ones who are in the enjoyment of property and have remained so undisturbed for more than a generation, have the better right to such property, or were left so undisturbed because their better right was well recognized. That a person and his predecessor in interest have held the undisturbed possession of property constitutes the strongest kind of vindication and proof of such right. To permit some technical rule of construction to construe the possession away from those who have held it for sixty years, is highly unsatisfactory to judicial reason. But we are unable to hold that the presumption of a lost grant under such circumstances has become one for the court to make. This is a matter for the legislature to consider.

 The same grounds of policy that authorize the jury to presume a lost grant to protect long continued occupancy of land, authorize the jury to presume from the sale of property by the surviving spouse, after the lapse of many years, that such sale was made for the purpose of paying community debts. Our Supreme Court said in Veramendi v. Hutchins, 48 Tex. 531, 551, "We are of opinion, however, that, in view of the great lapse of time after the sale by Colonel Bowie, being over thirty years before suit brought, that for over twenty-five years before suit parties had been in possession, claiming under this bond [i. e., bond for title], which during all that time was of record; and that during all this time there is no evidence of any claim by Mrs. Bowie's heirs in opposition to the title bond, the jury might have been instructed that they were at liberty to presume that the facts existed which authorized Colonel Bowie to convey. * * * 'A power to execute a deed will in many cases be presumed.' * * * In most cases where a deed would be evidence as an ancient deed without proof of its existence, the power under which it purports to have been executed·will be presumed. * * * If the heirs of Mrs. Bowie knew that the land was held and claimed under this bond of Colonel Bowie's their failure to assert their rights for so long a period, during which it seems the land has been improved so largely, tends to raise a natural presumption that they knew 'that no wrong has been committed.' * * * After the lapse of near forty years, it is not to be expected that direct evidence could be produced of the existence of community debts. The principal ground on which deeds over thirty years old, which have been acted on, and which come from the proper custody under circumstances free from suspicion, are admitted in evidence without proof of execution, is that the subscribing witnesses are presumed to be dead, and other proof beyond the reach of the party. * * * If a deed or a power of attorney may be presumed, why may not the facts which are equivalent to a power of attorney, and which, unlike a power of attorney, would not ordinarily be evidenced by writing, more readily be presumed?"

Appellees say that it ought to be presumed that Elizabeth Hamshire deeded the land in controversy to Louisa Cronea to pay community debts. They say, indeed, that they proved the existence of community debts, and that the existence of community debts does of itself authorize the sale of land by the surviving spouse. Certainly the power to sell community property to pay community debts does not include the power to give community property away, nor does it include the power to exchange property belonging to the community estate, unless it should be shown that such exchange was itself made to pay community debts. At any rate, if the existence of community debts is proved, and it is shown that the surviving spouse exchanged property as Elizabeth Hamshire did, it falls within the province of the jury, and not of the court, to indulge the presumption that the exchange of property was made to facilitate the payment of com-

munity debts. We cannot sustain the deed in this case on the presumption, made as a matter of law, that it was authorized as the exercise of the power to pay community debts by the surviving spouse.

 We adhere, however, to our former conclusion that the recitals in the deeds were not sufficient to give notice that Elizabeth Hamshire was the wife of John Hamshire at the time she acquired the land, and his widow at the time she conveyed it. The mere fact that the recitals in the deeds were sufficient to indicate that Elizabeth Hamshire was a "Mrs." at the time of the conveyance to her was not sufficient to put a purchaser on notice that she was a married woman at such time. Griggs v. Houston Oil Company, Tex.Com.App., 213 S.W. 261. To paraphrase the language used in the Griggs case and apply it to the instant case we can say, "The deed of February 15, 1858, and September 21, 1876, gave notice that Elizabeth Hamshire was once married to John Hamshire, and that this marriage occurred prior to February 15, 1858; but there is nothing in the two deeds or elsewhere in the record to indicate that John Hamshire was living at the time the land was conveyed to Elizabeth Hamshire." Appellants lean heavily upon the fact that Elizabeth Hamshire was referred to in the deed to Louisa Cronea as the widow of the late John Hamshire. The word late as applied to the deceased husband of a widow is of inexact meaning, except that it is taken to mean that such a woman is still the widow of the deceased, described as her "late" husband. Such a term certainly doesn't mean, of itself, the widow of a man who has died within the last 30 days, or within the last thirty years. Until the day of Victoria's death, it would have been in accordance with custom to refer to Prince Albert as Victoria's late consort, or late husband. So we conclude that the recitals were insufficient to prevent Louisa Cronea from being an innocent purchaser for value.

 If, however, we should be in error in our view that the recitals were insufficient to put Louisa Cronea on notice that Elizabeth Hamshire had a husband at the time she acquired the property, and that he died leaving heirs who inherited an undivided half interest, then we think it clear that all of the appellees that pleaded the statute of limitations were entitled to an instructed verdict. The undisputed proof showed that Louisa Cronea and family went into possession of the two hundred acre tract shortly after it was bought in 1876, and that the deed from Elizabeth Hamshire to her was promptly placed of record. This adverse possession, under a recorded deed, was maintained by Louisa Cronea and her family, who actually lived upon the premises until Louisa Cronea's death. Then in 1890, by deed dated December 20, 1890, and recorded, the children of Louisa Cronea partitioned this land among themselves, and continued to live upon this tract of land until such of them as sold their interest, moved off, but their successors in interest continued to use and occupy portions of the land, and at least one of Louisa Cronea's children still lives upon a portion of this tract. When the grantees in a deed take possession under it of any part of the land described in it, their possession constructively extends to the boundaries which it gives unless such possession is limited by the rule laid down in Turner v. Moore, 81 Tex. 206, 16 S.W. 929. Allen v. Boggess, 94 Tex. 83, 58 S.W. 833. The case of Turner v. Moore was the case in which the reasoning employed in Peyton v. Barton, 53 Tex. 298, where it was held that " 'where there is only a partial conflict of surveys, the statute will not run in favor of an adverse occupant under the junior title, if his actual possession does not extend to that part of the land in dispute which is within the conflict.' " was extended in its application "to cases where, as in the present case [i. e., Turner v. Moore], there is a conflict between a senior and a junior title, though such conflict does not arise out of the overlapping of a junior survey or location on an older one." [81 Tex. 206, 16 S.W. 930.] In other words, in the present case, each of the children of Louisa Cronea that went into possession of a segregated portion of the 200 acre tract, went into possession under and by virtue of the deed to their mother, and they occupied such segregated portions, as the heirs—as the representatives in legal contemplation of their mother. The portion of the 200 acre tract that was not partitioned (which is the 40 acres here in controversy) continued to be owned by such heirs as tenants in common, and the occupancy of any portion of the 200 acre tract by one of such heirs, whether segregated or not, was notice to the world that they were occupying such land in virtue of the deed to their ancestor which was duly recorded, and under the principle adverted to, such possession extended to the limits

of the deed so that the possession of each of such children was possession of the 40 acres of·land which continued to be held by such children as tenants in common under such deed.

Appellants' motion for rehearing is refused.