## PATTERSON et ux. v. SHELL PETROLEUM CORPORATION et al.

### No. 5160.

Court of Civil Appeals of Texas. Amarillo.

May 27, 1940.

Rehearing Denied Sept. 23, 1940.

Whitaker, Perkins & Turpin, of Midland, and Joe J. McGowan, of Brownfield, for appellants.

Carl Rountree, of Lamesa, W. A. Griffis, Jr., of Seagraves, Bradley & Wilson, of Lubbock, and Scott W. Key and Barksdale Stevens, both of Houston, for appellees.

FOLLEY, Justice.

This suit was originally filed by the appellants, B. T. Patterson and wife, Eva Patterson, alleged to be residents of Leon County, Texas, on May 18, 1938, against the appellees, the Shell Oil Company, George Baumgart, D. A. Robertson and others, in the nature of an action in trespass to try title involving the NE¼ of Section 826, Block D, in Yoakum County, Texas. By amended petition filed on May 25, 1939, the appellants sought to quiet title in them to the above land and to cancel a quitclaim deed of the date of November 17, 1937, from appellants conveying the land to D. A. Robertson. The trial court sustained general demurrers filed by the appellees to appellants' first amended original petition, and, upon appellants' refusal to amend their pleadings, dismissed the suit. It is from such action that this appeal is prosecuted.

The trial court having sustained a general demurrer to appellants' petition we are confronted with the rule which compels us to assume the truth of the facts alleged and to resolve every reasonable intendment in favor of the sufficiency of the petition. Sanderson v. Sanderson, 130 Tex. 264, 109 S.W.2d 744, and authorities therein cited. In this connection, however, we want it distinctly understood that our conclusions hereinafter expressed are governed by the above rule and are not to be misconstrued as findings of fact upon the merits of this case.

The appellants alleged that on March 20, 1917, Edward Randall and wife, Laura B. Randall, conveyed to J. N. Farris Surveys 828, 826, 866 and 892, in Block D,

Yoakum County, Texas; that Randall reserved a vendor's lien upon said land to secure the payment of ten notes for $1,280 each; that on March 6, 1917, Edward Randall and wife, joined by Mary Manson Ellis and her husband and Edward Randall Manson, conveyed Surveys 827, 829 865 and 893 in Block D of Yoakum County to J. N. Farris, reserving a vendor's lien to secure ten other notes each in the sum of $1,280, five of such notes, Nos. 1, 3, 5, 7 and 9, being payable to Mary Manson Ellis and Edward Randall Manson, and the other five, Nos. 2, 4, 6, 8 and 10, being payable to Edward Randall; that thereafter Notes Nos. 1, 2, 3, 4 and 5 were paid; that J. N. Farris died leaving a will devising all of his property to his wife, Maggie C. Farris, said will having been duly probated; that thereafter on or about March 15, 1923, Maggie C. Farris, for herself and as the independent executrix of the estate of her deceased' husband, conveyed the above eight sections of land to the appellee, George Baumgart, who as a part consideration assumed the payment of the above unpaid notes in the two series above referred to; that on March 20, 1924, Baumgart executed and delivered his ten promissory notes for $800 each, numbered 1 to 10, inclusive, said notes Nos. 2 and 4 being payable to Mary Manson Ellis and the other eight payable to Edward Randall, all of said notes being secured by a vendor's lien on Sections 829, 828, 827, 826 and 866, and being in renewal and extension of the unpaid balance of all of the notes and liens above described; that in such extension agreement it was stipulated that Baumgart, his heirs and assigns, should have the right at any time to secure a release of any of the land from the liens upon payment of not less than $2.50 per acre for the land desired to be released, said payments to be applied to the last maturing unpaid notes, provided such released tracts should not contain less than 160 acres; that thereafter by deed dated April 4, 1924, Baumgart and wife conveyed Sections 829, 828, 827, 826 and 866 to Zella M. White for $13,008.60 cash, the further consideration of her assumption of the payment of a debt of $8,000 as evidenced by the unpaid notes of the two series above mentioned, her further assumption of the payment of $3,432 due the State of Texas on Sections 828, 826 and 866, and the further consideration of her execution of fourteen ׳vendor's lien notes

dated April 4, 1924, the first thirteen being in the sum of $1,000 each and payable respectively to Baumgart on or before January 1, 1926 to 1938, inclusive, and the fourteenth note being for $2,559.40, payable on or before January 1, 1939, said notes bearing 8% interest and containing accelerated maturity clauses; that at the time said deed and the above notes were executed Baumgart and Zella M. White entered into an agreement to the effect that should Zella M. White, her heirs or assigns sell any of said land in tracts of 160 acres or multiples thereof, Baumgart would segregate the lien securing the payment of the notes held by him so as to permit each of said tracts to bear its proportionate part of his lien; that by deed of April 25, 1924, Zella M. White, joined by her husband, P. F. White, conveyed to B. F. Williams Sections 826 and 866, the recited consideration being $10 cash, the execution by Williams of two notes of $500 each payable to Zella M. White, each of said sections to carry a vendor's lien by virtue of one of such notes; that in said deed Williams assumed the payment of $3,200, being two-fifths of the blanket lien and indebtedness of $8,000 held by Edward Randall in connection with the notes executed by Baumgart, assumed the payment of $6,223.76, or two-fifths of the blanket mortgage and debt held by Baumgart against the five sections of land conveyed by Baumgart to Zella M. White, and further assumed payment of the unpaid obligation due the State of Texas for purchase money in the original grant from the State; that Williams and wife by deed dated October 10, 1924, conveyed the NE¼ of Survey 826 to W. E. Young and W. A. Bynum, the recited consideration being $10 cash, the assumption by grantees of $400 due Edward Randall, $777.97 due Baumgart and $125 due Zella M. White, alleged to be the proportionate amounts due on the 160 acres to the respective lienholders, and the further assumption of the indebtedness due the State of Texas upon said quarter section; and that by deed of January 5, 1925, Young and Bynum conveyed the 160 acres to the appellant, B. T. Patterson, the recited consideration being $2,000 in cash, the assumption by Patterson of the payment of the $400 indebtedness due Edward Randall, the $777.97 due Baumgart, the $125 due Mrs. Zella M. White and the $1.75 per acre, less 1/40 thereof, as the amount due the State of Texas.

The appellants further alleged that thereafter Baumgart filed suit in the District Court of Yoakum County, Texas, against certain defendants, including the appellant Patterson, for debt and foreclosure upon Sections 828, 827, 826 and 866 (which included the land herein involved); that Baumgart alleged that the residences of Patterson and the other defendants were unknown to him; that Patterson and all other defendants in said suit were cited by publication to be and appear in said court on the fourth Monday in December, 1927, the same being the 26th day of December, 1927; that thereafter on appearance day judgment was rendered for Baumgart against all of the defendants for debt and foreclosure upon the four sections of land; that none of the defendants in such suit, other than Patterson, owned or claimed any interest in the NE¼ of Section 826; that on February 14, 1928, after the date of the judgment, order of sale was issued and on April 3, 1928, the four sections of land were sold to Baumgart under said order of sale for a consideration of $3,200, the amount bid at such sale; that said judgment, order of sale and sheriff's deed made by virtue thereof were void because no affidavit for citation by publication was made as required by law, and because a personal judgment was rendered against the defendants therein; that the citation by publication was void and the judgment rendered thereon a nullity because the defendants in such judgment resided in Texas and their places of residence were known to Baumgart and his attorney; that the sale was void under said order of sale because it was made on April 3, 1928, which was after the return day of the order of sale issued on February 14, 1928, and returnable in thirty days; that the sale of the land for $3,200 was grossly inadequate; that no citation was ever served upon the defendants in such suit nor was there any waiver of service or any appearance by the defendants; that the citation by publication was void for the further reason that it was not published in Yoakum County where there was a newspaper at such time in which the same could have been legally published, but on the contrary was published in Terry County, Texas; that the appellant Patterson, defendant therein, could and would have redeemed his land from the indebtedness and liens if he had known of the suit; that Baumgart fraudulently concealed the suit from the Patter-

sons and for such purpose caused such action to be brought and Patterson to be cited by publication although Baumgart and his attorney knew the whereabouts and place of residence of all the defendants in such suit; that Baumgart cited such defendants by publication knowing that they did not live in Yoakum County and that they would not see the publication or know of the prosecution of the suit; that by reason of such facts the appellants did not appear and defend such suit nor did they discover that such suit had been brought and judgment rendered therein until a few days prior to the filing of the instant suit; that by reason of all the things above alleged the appellants were the owners of the NE¼ of Section 826; that the appellees have had possession of said land intermittently for the past few years and have collected a large amount of rents and revenues therefrom, an amount in excess of the principal, interest and attorneys' fees of said notes; and that the rental value of such land was in excess of the indebtedness due thereon and that appellees should be required to render an accounting of all rents and revenues received therefrom.

The appellants further alleged that on or about the month of November, 1937, the Shell Petroleum Corporation (now Shell Oil Company by change of name), by its officers and agents, and all the appellees herein, conspired and fraudulently acted together to induce the appellant, B. T. Patterson, to surrender and divest himself of the ownership of the NE¼ of Section 826; that pursuant to said scheme and purpose on and prior to November 17, 1937, the appellees caused D. A. Robertson, acting for himself and the other appellees, to approach the appellant Patterson and make fraudulent representations to Patterson; that it was represented that Baumgart had foreclosed on the land, making Patterson a party, and that by reason thereof the appellants had no interest in the land; that it was further represented that the unpaid indebtedness against the section of which appellants' land was a part, was largely in excess of the actual market value of the land; that upon inquiries made by Patterson, D. A. Robertson, in pursuance of the fraudulent scheme and conspiracy, represented to Patterson that said lands had no mineral value or value for oil and gas purposes and that there was no mineral development in the vicinity there-

of; that Robertson further represented that he was endeavoring to clear up the title of said lands for the owner thereof from minor defects which were not of sufficient importance to affect the title but might constitute a cloud on the same or cause some delay or inconvenience in the conveyance thereof by the owner; that each and all of such representations were false and fraudulent, were known to be such by the appellees and were made for the purpose of inducing the appellants to execute a deed to Robertson to the NE¼ of Section 826; that the appellants relied on such representations and but for them they would not have executed the deed; that at the time said representations were made the appellees knew, and the true facts were, that the proceedings in the foreclosure suit of George Baumgart were void and further knew that appellants had title to the NE¼ of Section 826; that the appellees knew, and the true facts were, that Baumgart had taken possession of such land and had collected rents and revenues therefrom in excess of the indebtedness due on the land; that the appellees knew, and the true facts were, that the actual market value of the land was many times the amount of the indebtedness and that such market and intrinsic value of the land was not less than $700 per acre; that the appellees knew, and the true facts were, that the lands had a large mineral value for oil and gas purposes, and were in fact in the center of what is known as "a hot oil play" and were in great demand by all oil operators, companies, prospectors and speculators, all of which facts were not only falsely and fraudulently concealed from the appellants, but were denied in answer to appellants' inquiry; that acting upon said false and fraudulent representations the appellants on or about November 17, 1937, for a nominal consideration of $25 executed and delivered to Robertson a quitclaim deed conveying to him all the right, title and interest of the appellants in said quarter section of land; that said deed was without consideration or in the alternative the $25 was a grossly inadequate consideration; that the appellees were wrongfully asserting some right, title and interest in such land which claims were invalid and cast a cloud upon appellants' title; that the appellants should be entitled to pay said indebtedness, if any, against said quarter section, and appellants offer to do so and to do equity; and that if the amounts of the rents and revenues from the land were not sufficient to satisfy all such liens and debts against the land, or if the appellants were not entitled to have the same applied upon the indebtedness, they offered to pay such amount as the court found to be due, unpaid, just and equitable, and tendered into court the return of the $25 consideration for the quitclaim deed.

The appellants further alleged that neither Baumgart nor any of the other appellees ever rescinded or attempted to rescind the sale or conveyance to Zella M. White of the lands conveyed to her; that neither Baumgart nor any of the appellees ever notified the appellants of any intention to rescind the sale; that Baumgart and the other appellees were not entitled to rescind because Baumgart delayed and did not attempt to rescind the sale when the annual installments became due respectively on March 20, 1925, 1926 and 1927, and for several years thereafter, but Baumgart indicated by his silence and failure to insist upon payment of the notes that he did not intend to insist upon the prompt payment thereof; and that George Baumgart, in bringing his foreclosure suit, elected not to rescind his conveyance of the lands to Zella M. White. Appellants prayed for judgment for the land and for cancellation of the deed to D. A. Robertson and of a deed from D. A. Robertson to George Baumgart, however, the latter deed was not theretofore mentioned in the petition. They further sought judgment that their title to said land should be quieted. It was upon the above allegations that the demurrer was sustained.

The appellants present numerous assignments and propositions attacking the action of the trial court, to which the appellees have addressed counter propositions seeking to uphold the court's action. We think the issues are thus reduced to three principal contentions, namely: (1) whether or not there were sufficient allegations for cancellation of the quitclaim deed from the appellants to Robertson; (2) whether or not there was an election of remedies by George Baumgart in his foreclosure suit such as to preclude a rescission after such election; and (3) whether or not the petition of the appellants is fatally defective because it shows upon its face that the appellants were guilty of laches as a matter of law or that their claim constitutes a stale demand or is barred by limitations, as asserted by the appellees.

It is apparent from the above allegations that the first hurdle the appellants must negotiate is to show sufficient allegations to set aside the quitclaim deed of November 17, 1937, conveying their right, title and interest in the quarter section of land to D. A. Robertson. Unless such conveyance is set aside all other issues pass out of the case. The appellees assert that the appellants have not alleged a cause of action in this respect because they have pleaded no sufficient grounds for cancellation. The appellees asser⁺ that the alleged misrepresentations of D. A. Robertson constitute, at most, mere expressions of opinion as to matters of law and of value and do not constitute actionable representations of existing material facts justifying cancellation.

We recognize the general rule that the "mere expression of an opinion is not a representation upon which a party contracting is entitled to rely, and which if found to be incorrect will be sufficient to avoid a contract". Little v. Allen, 56 Tex. 133, 139. However, there are some exceptions to this general rule. 20 Tex.Jur. 24, par. 12. We also recognize the general rule that misrepresentations as to a matter of law will not ordinarily support an action for fraud and deceit; however, this rule also has its exceptions. 20 Tex. Jur. 28, par. 14. Without discussing such exceptions to these rules it is our opinion that the allegations above with reference to the misrepresentations of Robertson contain some assertions which are neither expressions of opinions nor representations as to matters of law. We refer particularly to the allegation that Robertson represented to the appellants that the lands had no mineral value or value for oil and gas purposes and that there was no mineral development in the vicinity thereof, and especially is this true since the information furnished was asserted to have been in response to inquiries made by the appellants. These representations, we think, were of very material facts which, if untrue, constituted the very essence of deceit and fraud. Feist et al. v. Roesler, Tex.Civ. App., 86 S.W.2d 787, and authorities therein cited. In controverting the truth of these allegations the appellants alleged that the appellees knew, and the true facts were, that the lands then had a market value of $700 per acre; that they were situated in the center of what was known as "a hot oil play"; that they were in great demand by oil companies; and that Baumgart had theretofore executed gas and oil leases on the land and had received large sums in bonuses and rentals therefrom. We think it is apparent that these allegations contain all of the requisite elements of fraud, namely: (1) that they were misstatements of material facts; (2) that such statements were false; (3) that they were made with the intention that they should be acted upon; (4) that the appellants did not know they were false but relied thereon; and (5) that they were injured thereby. It is therefore our opinion that these allegations were sufficient to support a judgment cancelling the quitclaim deed.

There is no dispute between the parties in regard to the sufficiency of the allegations of the appellants to show that the foreclosure sale and the sheriff's deed in 1928 were void. It is the effect of such void foreclosure and sale and the subsequent possession of the appellee Baumgart of the land which affords the chief controversy between the parties herein. The appellants contend that the filing of the suit by Baumgart, the obtaining of the alleged void judgment therein and the attempted sale, amounted to an affirmance of the contract of conveyance and constituted an election of remedies which has not been abandoned and that the appellee Baumgart is therefore a mortgagee in possession without the right to now claim a rescission, a remedy inconsistent with the remedy pursued by him. The appellees contend that the foreclosure judgment and the sale thereunder having been alleged to be void, Baumgart was not precluded from thereafter claiming a rescission of his conveyance to Zella M. White.

We have been unable to find any authorities, and the parties herein have failed to cite us to any, which clearly decide the exact point in issue in this regard. It is elementary that Baumgart had a choice of remedies available to him when he filed his foreclosure suit. He could have abandoned the contract and recovered the land, which would have amounted to a rescission, or he could have asserted the contract and obtained a judgment for his debt and a foreclosure of his lien. Gardener v. Griffith et al., 93 Tex. 355, 55 S.W. 314; Mozoch v. Sugg, Tex.Com.App., 254 S.W. 770; Bassham et al. v. Evans, Tex. Civ.App., 216 S.W. 446. It is well settled that when a vendor elects to sue for the

debt and the establishment of his lien, and reduces the same to judgment, he loses his right to sue for and recover the land. Von Roeder v. Robson, 20 Tex. 754; Heirs of Edward Roberts v. Lovejoy, 60 Tex. 253; Gunst v. Pelham, 74 Tex. 586, 12 S.W. 233; Pierce v. Moreman et al., 84 Tex. 596, 20 S.W. 821. It has also been held that where one purchased land at a foreclosure sale, irregular or void as to the mortgagor or one claiming under him, such purchaser is claiming under the mortgage and is entitled to retain possession until his debt is paid. Robinson v. Smith, 133 Tex. 378, 128 S.W.2d 27; Jasper State Bank v. Braswell et al., 130 Tex. 549, 111 S.W.2d 1079, 115 A.L.R. 329. But these rules afford us little comfort in determining the right of a vendor to rescind his contract of sale after he has filed suit for his debt, obtains an alleged void judgment and takes possession under a void deed in a void foreclosure sale. However, it has been held that a foreclosure under a power of sale cannot be resorted to until abandonment and dismissal of a previously instituted judicial foreclosure suit. Gandy et al. v. Cameron State Bank, Tex.Civ.App., 2 S. W.2d 971, and authorities therein cited; First Trust Joint Stock Land Bank of Chicago v. Hayes et al., Tex.Civ.App., 90 S.W.2d 331. In this connection there was no allegation of an abandonment of the remedy of foreclosure first elected by Baumgart. On the contrary the appellants alleged that neither Baumgart nor any of the other appellees ever rescinded or attempted to rescind or repudiate the sale to Zella M. White. Moreover, the appellants have alleged that the foreclosure suit was fraudulent in that Baumgart knew the residence of the defendants therein yet he cited them by publication for the purpose of concealing the suit from them. This allegation, if true, we think would amount to legal fraud and under all these circumstances it is our opinion the theory of rescission cannot be reasonably deduced from the pleadings of the appellants.

 On the issues of laches, stale demand and limitations urged by the appellees in support of the judgment, we think a sufficient answer to this contention is that ordinarily these issues are matters of special defense which may not be reached by a general demurrer. The law of limitations is by statute made available in a suit only by a defensive plea and we think there is no variation from this statutory rule. Article 5540 R.C.S.; Johnston et al. v. Stephens et al., 121 Tex. 374, 49 S.W.2d 431; Rivers v. Washington, 34 Tex. 267; Sasser v. Davis, 27 Tex. 656, 657. It has also been held by the San Antonio Court of Civil Appeals, with the approval of the Supreme Court of this State that "laches or stale demand must be pleaded in order to avail a party invoking it against his adversary * * *". Moore v. Miller et al., 155 S.W. 573, 577, writ denied. Also, in Collins et al. v. Griffith, Tex.Civ.App., 105 S.W.2d 895, 898, this court held: "The presumption of laches or limitation arising from lapse of time may be rebutted and overcome by competent testimony, and under the allegations in appellee's petition and her proof, the delay is explained. These are issues to be determined on a trial of the merits if appellants plead limitation or laches as a defense. 28 Tex.Jur. p. 285, par. 191; 27 Tex.Jur. p. 31, par. 14."

 The appellants asserted a partial performance of the contract on their part, further pleaded that the appellees had made no effort to collect the purchase money or rescind the sale, and also charged the appellees with fraudulent conduct both in connection with the foreclosure suit and with reference to the execution of the quitclaim deed by the appellants. Under these circumstances we think the defensive issues of laches and stale demand become questions of fact to be decided in a trial upon the merits and cannot be reached by a general demurrer to the pleadings of the appellants. At least, laches and stale demand do not appear as a matter of law upon the face of the petition. Turner et al. v. Hunt et al., 131 Tex. 492, 116 S.W.2d 688, 117 A.L.R. 1066, and authorities therein cited; Johnston et al. v. Stephens et al., Tex.Sup. Court, supra; De Cordova v. Smith's Adm'x, 9 Tex. 129, 130, 58 Am.Dec. 136; Slaughter v. Coke County, 34 Tex.Civ. App. 598, 79 S.W. 863, writ refused; Drinkard v. Ingram et al., 21 Tex. 650, 73 Am.Dec. 250; Loomis et al. v. Cobb, Tex.Civ.App., 159 S.W. 305, writ refused; Montgomery et al. v. Trueheart, Tex.Civ. App., 146 S.W. 284, writ denied, and authorities therein cited; Bordages et al. v. Stanolind Oil & Gas Co. et al., Tex.Civ. App., 129 S.W.2d 786; Brady et al. v. Garrett, Tex.Civ.App., 66 S.W.2d 502; 21 C.J. par. 211, pages 210, 211; Walker v. Emerson, 20 Tex. 706, 707, 73 Am.Dec.

207; Shear Co. v. Stuth et al., Tex.Civ. App., 248 S.W. 158; Stafford v. Stafford, 96 Tex. 106, 70 S.W. 75.

What we have said above we think disposes of all the issues presented in this case and it follows that it is our opinion the trial court erred in sustaining the general demurrer to appellants' petition.

The judgment is reversed and the cause remanded.

### On Motion for Rehearing.

In appellees' motion for rehearing one contention is presented which we did not discuss in our original opinion. It is to the effect that appellants' suit being one for specific performance of an executory contract for the sale of land the general demurrer was properly sustained because the petition of the appellants affirmatively discloses that they have been guilty of laches as a matter of law. In 'this connection it is asserted that the failure of the Pattersons to pay the purchase money as agreed, together with interest and taxes, precludes their right to seek relief in a court of equity.

We are not in accord with appellees' contention that this suit is one for the specific performance of the original contract of sale. Under the authorities of this State we think it is settled that a general warranty deed reserving a vendor's lien securing purchase money is executory as between the vendor and vendee only in the sense that the naked title remains in the vendor to be automatically vested in the vendee upon payment of the purchase price and in all other respects the deed is an executed contract. Humphreys-Mexia Co. et al. v. Gammon et al., 113 Tex. 247, 254 S.W. 296, and authorities therein cited. When the purchase money has been paid the title of the vendee in such deed becomes absolute without any action on the part of the vendor. Carey et al. v. Starr et ux., 93 Tex. 508, 56 S.W. 324. It has also been held by the Supreme Court of this State that upon a tender of the purchase money into court the title of the vendee becomes perfect. Stitzle et ux. v. Evans, 74 Tex. 596, 12 S.W. 326, 327. In the latter case it is said: "Upon payment or tender of the purchase money in this case, the title of the appellee became perfect. Russell [& Seisfeld] v. Kirkbride, supra [62 Tex. 455]. Nothing remained for the grantors

to do to complete it. The contract was not executory on their part." ·

Since the appellants have tendered into court the purchase money and such other sums as may be adjudged to be due, it is still our opinion that laches and stale demand do not appear as a matter of law upon the face of appellants' petition. 21 C.J. 215, par. 213; Riley v. McNamara, 83 Tex. 11, 18 S.W. 141.

The motion for rehearing is overruled.