## THOMAS LITTLE V. M. A. R. ALLEN.

(Case No. 1403.)

1. DEED.— The legal effect of a deed which contains a covenant that the vendor has title to the land by regular chain of transfer from the original grantee, and warrants against the claim of any person claiming under the same, is not materially different in its legal effect from a general warranty deed.

2. DEED — BREACH OF WARRANTY.— When a deed is made under an agreement to compromise conflicting claims to the land, the fact that the grantee had, at the date of the execution of the deed, title to the land by limitation, cannot be set up as such an outstanding title as would defeat the warranty contained in the deed, so as to defeat the payment of money which the agreement stipulates shall be paid by the grantee.

3. EVIDENCE — CONSIDERATION.— When there is a plea denying that there was any consideration to support an ageeement, when the agreement on its face purports to have been made as a compromise of conflicting claims to land, it is proper to plead and prove that when the agreement was made there was pending litigation for the land between the parties.

4. CONSIDERATION.— A mutual agreement to compromise litigation is itself a valuable consideration to support the agreement.

5. CONTRACT.— The mere expression of an opinion is not a representation on which a party contracting is entitled to rely, and which, if found to be incorrect, will be sufficient to avoid the contract.

ERROR from Houston.   Tried below before the Hon. J. R. Kennard.

Suit by defendant in error against plaintiff in error, February 11, 1881, for the specific performance of the following contract, or in. the alternative for judgment for the amount specified therein ($300), and interest, with foreclosure of vendor's lien:

"April 14, 1880.   This is to make known that I have this day agreed to pay Nunn & Williams, in compromise settlement for M. A. R. Allen's interest to one-half undivided interest in and to the Welsh league, or so much thereof as I have on said league, to wit, three hundred acres, the sum of $300, with ten per cent. interest, and

lien on the land for payment.   Nevertheless, it is further agreed that the said Nunn & Williams will accept from me in satisfaction of the above, one hundred and fifty acres of said land, to be taken off the southeast end of said three hundred acres, and that deed of conveyance will be signed by myself and wife as soon as the same is prepared, and to be duly acknowledged.   And in consideration thereof, said Nunn & Williams agree to make to the undersigned a good and sufficient title for Mrs. Allen's interest to the one-half of so much of said league as remains to me out of the said three hundred acres; and the said Nunn & Williams agree to prepare said deeds in a reasonable time and deliver and present.

(Signed)                           "THOMAS LITTLE."

Plaintiff alleged a full compliance on her part with the terms of the contract, and that defendant had refused to comply, etc.

Defendant answered March 11, 1881, by demurrer and special exceptions, and by a sworn plea of want of consideration, alleging that he was the owner of the whole tract, and setting out his title fully; also alleged that plaintiff represented that her title to an undivided half of the land was good, and promised to make defendant a warranty title, and that the obligation was executed by him on the faith of said representations and promise; that only a quit-claim deed, or one with special warranty, had been tendered to him; that he was old and infirm, had no legal advice, and plaintiff was represented by her attorney; and that the obligation was executed in ignorance of his superior title to the land, and plaintiff well knew that she had no title.

Plaintiff filed a first supplemental petition, alleging "by way of reply to defendant's answer, and in addition to the matters and considerations named in the original petition," that at the time the obligation was executed she had instituted her suit in the United States circuit

court at Tyler against defendant and others as trespassers for the Welsh league; and that in consideration of defendant's said obligation, she agreed to dismiss said suit as against defendant, and that, induced thereby, she dismissed the suit and paid the costs; wherefore defendant "was estopped from denying the force and binding effect of said agreement."

Defendant excepted to the supplemental petition because it was not alleged that plaintiff was injured by the dismissal of the suit, or that she had title, or that the title was doubtful, and no sufficient consideration was alleged; and because it set up a consideration variant from that stated in the obligation, and also sought to vary the terms of the contract so far as it obligated plaintiff to make a good and sufficient title, etc., and without alleging fraud or mistake. Defendant also in reply alleged misrepresentation of title, promise of a warranty title by plaintiff, ignorance of his own title, etc.

The demurrer and all the exceptions of defendant were overruled, to which he excepted. Verdict in response to the charge of the court, that the facts in plaintiff's original and supplemental petitions were true, and for plaintiff for the amount of the obligation and interest, "and that a vendor's lien exists." Judgment was rendered for plaintiff for that sum and costs, and foreclosing a vendor's lien on an undivided half interest in the three hundred-acre tract.

The deed tendered conveyed to the defendant Mrs. Allen's "right, title and interest" in the land, after deducting the one hundred and fifty acres sought to be recovered in this suit, with the following covenants: "And I hereby covenant that I am the widow and sole heir of Wm. S. Allen, deceased; that during his life-time the title to an undivided one-half of said league and of the aforesaid premises was vested in said Allen by virtue of conveyance from said John Welsh, and that the title

descended to and vested in me on his death, and that neither said Allen nor myself has ever aliened or conveyed such title; and I covenant that the aforesaid chain of title from John Welsh down to me is genuine; and I bind myself, my heirs and legal representatives, to warrant and forever defend the right under such chain of title unto the said Little, his heirs, administrators and assigns, against the claims of every person lawfully claiming or to claim the said premises or any part of same thereunder. This conveyance is made in settlement and compromise of adverse claims to said land between said Little and myself."

*J. R. Burnett*, for plaintiff in error.

*Nunn & Williams*, for defendant in error

STAYTON, ASSOCIATE JUSTICE.— Under the first assignment of error it is claimed that the deed tendered to Thomas Little by Mrs. Allen was a mere quit-claim, and therefore not such a deed as was contemplated by the agreement of 14th of April, 1880. No other objection is urged to the deed.

The agreement does not in express terms provide that a deed should be made by Mrs. Allen for her interest in the three hundred acres of land therein named, in the event that the $300 was paid by Thomas Little; and the object and purpose of the parties in reference to quieting the title of Little, in so far as the conflicting claim of Mrs. Allen was concerned, was accomplished by the agreement signed by Little and accepted by Mrs. Allen.

The execution of a deed by Little and wife to Mrs. Allen was provided for in the agreement, in case Little elected to convey one hundred and fifty acres of the land to Mrs. Allen in satisfaction of her claim, instead of paying the $300; and in the event such a deed was made, it was provided that Mrs. Allen would make to Little

"good and sufficient title for Mrs. Allen's interest in one-half of so much of said league as remains to me out of the said three hundred acres."

The obligation to make this deed depended upon the conveyance by Little to Mrs. Allen of the one hundred and fifty acres. The agreement of April 14, 1880, leaves it uncertain whether it was the intention of the parties that Mrs. Allen should make a deed other than one simply conveying her interest in the land. Whatever may be the true construction of the agreement in this respect is, however, immaterial; for if the refusal of Little to execute a deed in accordance with his agreement did not relieve Mrs. Allen from all obligation to make a deed, the deed tendered is not a mere quit-claim.

The deed tendered by Mrs. Allen covenants, in effect, that she had title to the land by regular chain of transfer from the original grantee, and warranted against the claim of every person claiming under the same.

Though not in the form usual to warranty deeds, yet the legal effect of such a deed as that tendered is not materially different from a deed with general warranty; for without breach of the covenants contained in the deed there could be no failure of title to Little, and upon breach of the covenants his remedy would be as efficient as though the deed was a deed with general warranty. Peck v. Hensley, 20 Tex., 677. She covenants that she has good title, and her warranty is that she will defend Little against the claims of all persons claiming thereunder.

The court did not err in holding that the deed tendered was such a deed as was contemplated by the agreement.

It is not claimed that there has been a failure of title, except in that Little claims that at the time the agreement of April 14, 1880, was executed he had title to the land by limitation; if this were so, contracting as the parties were for a compromise of their respective claims,

such an outstanding title in Little would not be a breach of the warranty upon which he could rely to defeat a recovery of the money which he had promised to pay, with a full knowledge of his own title and its condition at the time he made the promise.

The court did not err in overruling the special exceptions of plaintiff in error.

The agreement upon its face shows that it was made for the express purpose of compromising the conflicting claims of the parties to the land which was the subject matter thereof; and the pleadings which set up the existence of the suit in the United States circuit court, and its subsequent dismissal, did not set up a different consideration to that set out in the agreement, nor did it have effect in any way of varying the agreement.

The plaintiff had filed a sworn plea in which he denied that there was any consideration to support the agreement; and as the agreement upon its face appeared and purported to be made as a compromise of conflicting claims, it was highly proper to plead and prove that there was a pending litigation between the parties in regard to the land, for the purpose of supporting the consideration named in the agreement.

The plea impeaching the consideration did not deny the execution of the agreement, nor that there were conflicting claims to the property held by each party, nor that the agreement was made to compromise conflicting claims; in such case it would seem that the plea itself was defective, however broadly it might assert that there was no consideration, unless it be true that an agreement by which parties compromise conflicting claims needs something more than the mutual concessions and promises of the parties thereto, in order that the same may be upon consideration deemed valuable in law. A mutual agreement for compromise is in itself a valuable consideration.

In Cavode *v.* McKelvey, Addison, 56, it was held that where one claimant purchased the title of another claimant the contract was upon valuable consideration, though the title bought was bad.

In Okeson *v.* Barclay, 2 Penrose & Watts, 531, which was an action for libel, it was held that a compromise of the action was a valuable consideration sufficient to sustain an agreement, although the words alleged to be libelous were not actionable.

No investigation into the character or value of respective claims will be made, it being sufficient that the parties thought there was a question between them. 1 Parsons on Contracts, 439.

In Hoge *v.* Hoge, 1 Watts, 216, it was held that the compromise of a doubtful title was a valuable consideration, and sufficient, although a party thereto may have been ignorant of his rights, unless the compromise be vitiated by fraud sufficient to set aside any other contract.

Under the evidence the court might well have refused to give any charge in reference to the obtaining of the agreement by fraudulent representations; for the evidence does not show that the attorney who made the agreement for Mrs. Allen made any statement whatever calculated to make an undue impression upon any reasonable person; in fact, he expressly declined to advise the plaintiff in error.

It is true that the attorney who made the agreement gave it as his opinion that the title of Mrs. Allen was genuine, and there is nothing in the evidence tending to show that his opinion was incorrect. The mere expression of an opinion is not a representation upon which a party contracting is entitled to rely, and which if found to be incorrect will be sufficient to avoid a contract. Story on Contracts, 510, 511.

In this case the plaintiff in error was not entitled to rely upon any opinion given by the attorney, for he ex-

pressly informed him that he could not be his adviser, and it is not pretended that any fraudulent misrepresentation was intended. There is no ground for belief that the defendant in error was ignorant of any fact, at the time the agreement was made, relating to his own title or to that of Mrs. Allen. He may have had an erroneous opinion upon the facts, but this would be no ground for relief unless that opinion was based upon a misrepresentation of fact by Mrs. Allen or her attorney.

The court did not err in refusing to give charges which were asked, by which it was sought to have the jury pass upon the intention of the parties in making the agreement of April 14, 1880, and in effect to have the jury construe the same; that duty devolved upon the court; and under the views hereinbefore expressed, it is unnecessary further to consider the third assignment of error.

For the reasons before indicated the fourth assignment of error is not well taken.

The court did not err in instructing the jury, in effect, that a lien existed on the land to secure the purchase money; for it was the duty of the court to construe the written agreement between the parties, and to instruct the judge as to the effect of the same. The construction placed upon the instrument was in substance correct, for Little in the agreement expressly contracted that the lien should exist to recover the purchase money.

The agreement between the parties recognizes a sale of Mrs. Allen's interest in one-half of the land by the defendant in error to plaintiff in error, for which he agreed to pay $300, and that interest is subject to sale to pay the purchase money, and the court did not err in so adjudging. There is no error in the judgment, and it is affirmed.

AFFIRMED.

[Opinion delivered January 24, 1882.]