## WALLACE et al. v. LARSON.
### No. 2703.

Court of Civil Appeals of Texas. Waco.
Dec. 19, 1946.

Rehearing Denied Jan. 23, 1947.

Simmons & Jacobs, of Corsicana, and Dan Moody, of Austin, for appellants.

Tyson, Dawson & Dawson, of Corsicana, for appellee.

HALE, Justice.

Appellants, A. J. Wallace and N. R. Bowden, entered into a verbal agreement with appellee, N. L. Larson, on April 3, 1942, hereinafter referred to as the partnership agreement, whereby it was understood that

appellants would secure certain war contracts with the U. S. Government for construction work at Camp Hood, Texas, would finance the same, appellee would superintend the work, each would furnish certain equipment and the three would share equally in the profits or losses arising out of the enterprise. In pursuance thereof appellants entered into nine contracts with the Government during the remainder of that year from which the entrepreneurs derived substantial profits.

In the spring of 1943 appellee sought an accounting and a dissolution of the partnership enterprise by reason of the fact that he was soon to enter into the military service. After due negotiations the parties arrived at a second verbal agreement on March 18, 1943, hereinafter referred to as the settlement agreement, by the terms of which they settled their accounts, dissolved the enterprise and terminated the partnership agreement. As a part of this settlement it was agreed that appellants would pay to appellee $14,000 in cash and complete the performance of a contract which appellee had in Grayson County. In the discussions leading up to the settlement agreement the parties mentioned the possibility that the Government might exercise its right under the Federal Renegotiation Act of April 28, 1942, 50 U.S.C.A.Appendix, § 1191, to reclaim excess profits paid under the construction contracts. Whether appellee was obligated under the terms of the settlement agreement to pay one-third of the renegotiation liability, if any, is the controlling issue of law and fact in this case.

After the settlement agreement had been arrived at appellants paid to appellee the sum of $14,000 and completed the performance of his contract in Grayson County. In August of 1943 the Government called upon appellants to renegotiate each of the nine contracts and as a result thereof appellants did on November 13, 1944, refund to the Government the total sum of $19,366.-99. Appellants then called upon appellee to repay to them the sum of $6,455.66, that being one-third of the renegotiation liability which they had discharged, and upon his failure so to do they filed this suit seeking recovery of that amount against him.

In their trial petition appellants alleged in detail the substance of the foregoing facts. In addition thereto they unequivocally pleaded that the settlement agreement "constituted an accord and satisfaction as to the division of such profits between plaintiffs and defendant, but that at such time, it was contemplated by all the parties thereto that if there should be a renegotiation of said contracts by which the Government would require a refund of a part of such profits, that each of said parties would be renegotiated separately, and this was agreed to and understood by and between the parties at the time the above mentioned settlement was effected." They further alleged that they did not agree at the time they accepted appellee's offer of settlement to pay off and discharge all of the renegotiation liability, if any, to the Government but that at such time they treated and regarded "any renegotiation liability as a joint and several obligation upon which they were each liable for one-third thereof."

Appellee also pleaded that the settlement agreement constituted an accord and satisfaction as between the parties. He expressly denied the allegations in appellants' pleading "to the effect that the plaintiffs understood and the defendant assured them that if the U. S. Government contracts referred to in plaintiffs' pleading were renegotiated that this defendant would be bound and liable to refund one-third of the profits recalled by the Government pursuant to the Renegotiation Act." He further pleaded, in the alternative, that if the settlement agreement did not constitute an accord and satisfaction as between the parties on profits and losses arising out of the joint enterprise, then the total amount of profits from the nine Government contracts before renegotiation was $86,474.98; that after renegotiation and the reduction of such profits by the sum of $19,366.99 the remaining net profits amounted to $66,107.99; that he was entitled to receive one-third of such net profits, or the sum of $22,369.33, less the sum of $14,000 paid to him under the settlement agreement. By way of cross-action and only in the event the court should find against the pleas of accord and satisfaction, he set up other items of accounting in his favor

on other contracts arising out of the joint enterprise and sought judgment against appellants in the sum of $33,225.77.

The case was tried before a jury. The witnesses consisted of the three parties to the suit and of appellants' bookkeeper. There was no dispute in the evidence except as the same related to the discussion of renegotiation leading up to the settlement agreement. Throughout the trial the attorneys and witnesses referred repeatedly to this agreement as an "accord and satisfaction." There was no substantial dispute in the evidence with reference to the discussion of renegotiation but it appears that the parties did not place the same construction upon what was actually said and they did not arrive at the same conclusions of fact with respect thereto. At the close of the evidence the court submitted the case to the jury on one special issue, as follows: "Do you find from a preponderance of the evidence in this case that at the time of the settlement of partnership affairs between Wallace and Bowden on the one hand and Larson on the other hand, that Larson then agreed to pay his proportionate part of any renegotiation charge that might be made by the U. S. Government on profits arising out of the joint enterprises between plaintiffs and defendant?" The jury answered the issue "No" and thereupon the court rendered judgment that appellants take nothing.

Under the two points in their brief appellants say the court erred (1) in placing upon them the burden of establishing that appellee had agreed to bear his proportionate part of the renegotiation liability and (2) in refusing to submit to the jury their requested issues wherein they sought findings on whether they had and had not assumed sole responsibility for the renegotiation liability which they discharged. As we understand their contentions they assert in substance that the plea of accord and satisfaction was not properly established in the trial court and since they were in part suing a former partner for contribution by reason of their having discharged a partnership liability, the trial court erred in submitting the case to the jury in the manner and form in which it was submitted, for the reasons urged. In support of their contentions they cite the case of Willis v. First National Bank of Burkburnett, Tex.Civ.App., 262 S.W. 851. In our opinion, a correct disposition of the appeal turns upon whether or not the settlement agreement constituted an accord and satisfaction between the partners inter sese of the mutual rights and obligations arising out of the partnership agreement.

Accord and satisfaction is a well recognized legal method of discharging any kind of a contract or cause of action, "whereby the parties agree to give and accept something in settlement of the claim or demand of the one against the other, and perform such agreement, the 'accord' being the agreement, and the 'satisfaction' [being] its execution or performance." 1 C.J. S., Accord and Satisfaction, § 1, p. 462. See also: 1 T.J., p. 245, sec. 2; 1 R.C.L., p. 177; 1 Am.Jur., p. 215, sec. 1. Although the term or phrase "accord and satisfaction" contemplates a completed transaction, it is well settled in Texas and in other jurisdictions that a promise to perform the agreement of accord, rather than actual performance thereof, may in and of itself constitute the satisfaction, provided there is an express agreement to this effect or if such is clearly the intention of the parties. Ferguson-McKinney Dry Goods Co. v. Garrett, Tex.Com.App., 252 S.W. 738; Gulf C. & S. F. R. Co. v. Harriett, 80 Tex. 73, 15 S.W. 556; Bost v. Barringer, Tex.Civ.App., 202 S.W. 791; Hudspeth v. Hilburn, Tex.Civ. App., 283 S.W. 314; 1 C.J.S., Accord and Satisfaction § 22, p. 489, and authorities; 1 Am.Jur., p. 254, sec. 69 and authorities.

From the pleadings, the evidence and the entire record before us we think it conclusively appears that the settlement agreement of March 18, 1943, constituted an accord between the parties thereto insofar as any rights and liabilities arising among themselves under the partnership agreement of April 3, 1942, may be involved herein and that the mutual acceptance of the new promises embraced in such accord constituted a satisfaction thereof. It is evident that both parties so regarded the settlement agreement because each expressly pleaded that it constituted an accord and satisfaction. By employing such technical terms in their pleadings we must presume

that the parties and their able counsel were familiar with the legal meaning and effect thereof and that each intended for both to be mutually bound thereby. Furthermore, appellants excepted to the alternative pleading of appellee whereby the latter sought in his cross-action to secure a further accounting under the partnership enterprise, on the ground that such alternative pleading was wholly inconsistent with the pleas of accord and satisfaction interposed by both parties. Appellants also objected to the introduction of evidence offered by appellee in support of his cross-action for the same reason.

Each of the witnesses testified that the matter of renegotiation of the Government contracts was mentioned in the discussion leading up to the settlement agreement and each attempted to repeat the exact conversation to the best of his ability. Appellants and their bookkeeper each testified that when appellee submitted his offer of settlement and before the same was accepted, Mr. Wallace asked him who would do the renegotiating and appellee replied in substance that it would make no difference because each of the parties would be renegotiated separately. Mr. Wallace further testified on direct examination that at the time he entered into his "accord and satisfaction with Mr. Larson" he relied upon the statement so made by appellee and but for such statement he would not have "entered into the accord and satisfaction." Appellee testified that he stated in the discussion "I believe they are going to be renegotiated; they are going to renegotiate everybody;" that the subject of renegotiation was mentioned only casually and that nothing definite was agreed to; that he did not say anything in the conversation indicating that he would respond with any part of the renegotiation and that after taking such a loss on the settlement he did not expect to do so.

■ It appears to us that reasonable minds might differ in concluding from the evidence as a whole whether or not appellee agreed, either expressly or by implication, at the time of the settlement of the partnership affairs between himself and appellants

that he would refund to appellants one-third of any renegotiation charge that might thereafter be made by the Government as for excess profits. In our opinion that was the only ultimate, controlling issue of fact raised by the pleadings and tendered by the evidence and the burden rested upon appellants to establish the existence of that fact before they were entitled to any recovery under this record.

■ Neither party objected to the court's charge on the ground that he had failed to submit the issue of "accord and satisfaction," or the fact elements involved in such issue, if any, and neither party requested the court to submit such issue or its ultimate fact elements to the jury. Therefore, if any such issue was joined by the pleadings or raised by the evidence we must presume that the trial court found such issues in support of his judgment.

■ If in law and in fact the settlement agreement constituted an accord and satisfaction as between the parties with respect to their mutual rights and liabilities under the original partnership agreement, there was and could be no legal duty or obligation in this case resting upon either party for any further mutual accounting among themselves under the original partnership agreement. Hence, unless there was some character of promise, either express or implied, from appellee to appellants in the agreement of accord whereby the former obligated himself to pay his proportionate part of any renegotiation charge that might thereafter be made by the Government against the latter on account of profits arising out of the joint enterprise, then there could be no legal liability resting upon appellee for contribution to appellants on account of their having discharged the renegotiation liability. Under such circumstances it would be wholly immaterial, we think, whether appellants did or did not in the agreement of accord expressly assume sole responsibility for the renegotiation liability.

Because we have concluded there was no error in the trial court's judgment, the same is affirmed.