J. KAHN & CO., Inc. v. CLARK, Attorney General et al.

No. 12863.

United States Court of Appeals
Fifth Circuit.

Dec. 2, 1949.

C. M. Smithdeal, Dallas, Texas, for appellant.

Ralph S. Spritzer, Attorney, Dept of Justice, Washington, D. C., Frank B. Potter, U. S. Attorney, Fort Worth, Texas, William P. Fonville, Asst. U. S. Atty., Dallas, Texas, for appellee.

Before HUTCHESON and RUSSELL, Circuit Judges, and DOOLEY, District Judge.

HUTCHESON, Circuit Judge.

The suit, brought under Sec. 9(a) of the Trading with the Enemy Act, 40 Stat. 411, as amended, 50 U.S.C.A.Appendix, §§ 1 to 39, was to recover $16,000.00 seized and paid over under vesting order of May 27, 1947, as money owed by plaintiff, a cotton merchant organized under the laws of Texas, on that date to Asahi Menka Shokai, a Japanese national.

The claim was that: though plaintiff had entered on its books on October 21, 1941, a credit of $16,000 in favor of Asahi, that entry was made without consideration and under a mistake of fact, and in ignorance of appellant's legal rights; and that, in addition, if there was an original obligation, the coming on of the war had completely abrogated it.

The defense was that the credit on plaintiff's books was an acknowledgment of liability entered freely, knowingly, and upon consideration.

The district judge, upon full consideration of the evidence,[1] was of the opinion:

1. This consisted of 15 successive purchase contracts for the sale of cotton to Asahi, aggregating 2800 bales, the first dated 2-28-41 for 200, the last, June 19, 1941, also for 200 bales, and the testimony of one witness for plaintiff, Robert Meyer.

Each of the 15 contracts calls for shipment of a fixed number of bales of a specified type of cotton, C. I. F., "payments to be made by cash against documents, in New York before shipment", with an option to the buyer to call for shipment in either of two specified months, May or June, July or August.

Meyer testified in substance that the buyer never gave any specific instructions on the cotton, and that on July 26, 1941, when the freeze order of all Japanese assets in the United States was issued, plaintiff had on hand for delivery all the cotton ordered. After the freeze order was issued, Asahi and plaintiff had numerous exchanges about the shipments, but plaintiff could not obtain from the government the necessary license to unfreeze the contracts so that plaintiff could ship or Asahi pay.

Asahi then asserted that because of the freezing order and without fault on its part, performance on the contracts had been prevented, and, through Yamada & Co., plaintiff's brokers in Japan, it demanded of plaintiff $25,000 for a can-

---

that the settlement and the credit constituted an accord and satisfaction; that the plaintiff thereby became bound to Asahi for the $16,000 agreed; that this credit was the property of the Japanese alien; and that plaintiff, having, as it was obligated to do, paid it over to the alien property custodian, could not recover it back.

Plaintiff, appealing, is here insisting that, in so holding, the district judge has charged it with a liability which does not in fact and in law exist, and that the judgment may not stand.

In support of this claim, it makes many arguments and puts forward many propositions, but they all at last come down to this; that the agreement with Asahi and the credit to its account were not executed but executory transactions; that if plaintiff had not paid the money to the custodian as it was required to do upon his demand,[2] it would have been entitled as against Asahi to show that the credit was made without consideration and under a mistake or in ignorance of fact or of law, and if it could have shown this, Asahi could not have recovered, and therefore the custodian who stands in Asahi's shoes must make restoration to plaintiff.

We agree with appellant's contention that the custodian stands no better in law than Asahi, indeed that his only claim is in virtue of Asahi's right, and that appellant may urge against the custodian any defenses which he could have urged against Asahi.

We cannot agree with appellant, though, that the grounds he puts forward would constitute a defense against Asahi. One of these grounds is that there was no consideration for the settlement and credit and, therefore, it could not constitute an accord and satisfaction because (1) Asahi, and not plaintiff, breached the contracts, and, if anyone owed anything on account of the contracts, Asahi owed plaintiff and not plaintiff Asahi, or (2) neither owed the other, because the freezing order prevented the carrying out of the contracts and thereby released both plaintiff and Asahi from them.

Another ground is that an accord without satisfaction is not binding or enforce-

---

cellation of its contracts and release of plaintiff therefrom.

Yamada cabled plaintiff, "Asahi cancellation all open contracts require $25,000 do your best agree balance advise you in a few days." Asked what he understood by that cable, the witness testified, "We had cabled them, and insisted that we had this cotton on hand, we could not get paid for it and something had to be done because the cotton market fluctuates daily, and we were anxious to come to some kind of settlement so we could sell this cotton and protect ourselves from any decline in the market, and we understood this cable to mean that Asahi wanted $25,000 to cancel the contracts."

Upon receipt of this cable, plaintiff cabled Yamada, "Asahi best possible $16,000, fear further decline soon wipe out equity demand liquidation cotton on hand must resell subject immediate reply. Anxious liquidate other customers please assist us."

In further explanation, Meyer testified that the $16,000 was arrived at by figuring the cost. Yamada in reply cabled plaintiff, "Asahi amicably settled $16,000".

The following occurred with respect to this cable:

"Q. That is an acceptance of your offer? A. Yes.

"Q. You offered to pay $16,000 and it was accepted? A. That is right.

"Q. That was to do away with any liability you might have had? A. That is right.

"Q. Now what is the general rule of the Cotton Exchange? If you have cotton on hand and you are unable to deliver it, what do you do? A. We would approach the buyer and come to a mutual agreement.

"Q. You would credit him or debit him depending on what the situation was? A. Yes, sir."

The witness also testified that before freezing of the credits, other contracts with Asahi had been cancelled and plaintiff had given credits to Asahi. Finally Meyer testified that pursuant to the Regulation of 4-10-41, plaintiff reported to the Secretary of the Treasury fourteen book accounts payable, including the account with Asahi.

2. Camp v. Miller, 5 Cir., 286 F. 525.

able and that the entry of the credit was not a satisfaction.

A third ground is that the war rendered the contracts unperformable and if there was a consideration at the time of the settlement this was destroyed by the war.

■ The district judge thought that the demand of Asahi, whether or not it could have been enforced, was certainly a disputed claim; that the settlement of the demand for an amount considerably less than was demanded, with the result of releasing the cotton to plaintiff so that he could sell it and minimize his losses, furnished full consideration; that the accord and credit was accepted as a satisfaction; and that plaintiff cannot now be heard to dispute the debt as his books showed it to be.

We agree with the district judge. Whether, if, instead of agreeing that Asahi had a claim and settling with him by giving him a credit, plaintiff had resisted the claim, he would have had good grounds to defeat it, we need not decide, for no such question is presented here. Here, appellant's own testimony shows: that there was a real dispute between it and Asahi; that in order to settle it and to release the cotton for sale and avoid the heavy loss, which might come with a decline in value while the matters in dispute were pending, he had agreed with Asahi to settle the claim which he recognized as having a substantial basis; and that as a part of the agreement, he had credited Asahi with the amount agreed upon in settlement.

■ "Compromises of disputed claims are favored by the courts." Williams v. First National Bank, 216 U.S. 582, 30 S. Ct. 441, 445, 54 L.Ed. 625; Gilliam v. Alford, 69 Tex. 267, 6 S.W. 757. Where the parties, acting in good faith, settle a controversy, the courts will enforce the compromise without regard to what the result might, or would have been, had the parties chosen to litigate rather than settle. Hennessy v. Bacon, 137 U.S. 78, 11 S.Ct. 17, 34 L.Ed. 605; Crisp County v. S. J. Groves & Sons Co., 5 Cir., 73 F.2d 327, 96 A.L.R. 391; Camoron v. Thurmond, 56 Tex. 22; Little v. Allen, 56 Tex. 133.

■ This court, in Crisp County v. S. J. Groves & Sons Co., supra, held that an agreement of the parties settling a disputed liability is as conclusive of their rights as a judgment would be if it had been litigated instead of compromised. It is the law in Texas and elsewhere that "A mutual agreement for compromise is itself a valuable consideration * * *", Little v. Allen, supra.

■ As to appellant's point that an accord without satisfaction is not binding, we think it clear that when an accord has been followed by a credit, as here, the creditor has alternative rights. "He can enforce either the original duty or the subsequent contract", Restatement Contracts, Sec. 417(c). But over and above this, we think the district judge was right in holding that the credit was accepted as immediate satisfaction and discharge of the claimed liability. Restatement, Sec. 418; 1 C.J.S., Accord and Satisfaction, § 38, subsec. (b). The credit having been accepted, it becomes enforceable on ordinary principles of contract law. McCarney v. Scott, 2 Cir., 146 F.2d 624; Ferguson-McKinney Dry Goods Co. v. Garrett, Tex. Com.App., 252 S.W. 738; Wallace v. Larson, Tex.Civ.App., 199 S.W.2d 198. Cf. Restatement, supra, Sec. 419.

■ As to appellant's final argument that the credit was merely an executory contract and that war frustrated and annulled it, it is quite clear that that principle, good enough where applicable, does not apply here. The principle controlling here is that a right which has become fixed prior to the war's inception is suspended but not destroyed. Sands v. New York Life Ins. Co., 50 N.Y. 626, 10 Am. Rep. 535. There was no war at the time of the settlement, and the settlement was legal and valid when made. When the war came on, the matter had passed into the executed and finished state of an accord and a credit which had been accepted as satisfaction. There was no mistake, mutual or otherwise, about the settlement, nor was it arrived at ignorantly or under any kind of deception. The facts were fully known to plaintiff and to Asahi.

They made a settlement. Asahi accepted the credit on the running account between the two as satisfaction. The settlement stands. The judgment was right. It is Affirmed.