Bessie Mae GILLMAN, Individually and as Independent Executrix, Appellant,

v.

M. Cadie GILLMAN et al., Appellees.

No. 6767.

Court of Civil Appeals of Texas.

Amarillo.

May 5, 1958.

Rehearing Denied June 9, 1958.

Sanders, Scott, Saunders & Smith, Amarillo, for appellant.

Underwood, Wilson, Sutton, Heare & Boyce and Adkins, Folley, McConnell & Hankins, all of Amarillo, for appellees.

PITTS, Chief Justice.

Plaintiff, Bessie Mae Gillman, individually and as independent executrix of the will and estate of her deceased husband, Myron Gillman, filed this suit originally on April 19, 1956, against the sisters of her deceased husband, M. Cadie Gillman, a feme sole, and Lula Morgan, joined by her husband, Jim Morgan, and against her daughter by a former marriage, Beatrice Thoyts, joined by her husband, D. E. Thoyts, and Larry Gene Graham, the son of Beatrice Thoyts by her former marriage and the grandson of appellant, seeking an order of the court adjudging plaintiff herself to be the owner and have title to 64 shares of capital stock in Travelers Oil Company purportedly bequeathed by Myron Gillman, deceased, in his will to his said sisters, M. Cadie Gillman and Lula Morgan, the first named to have 44 shares thereof and the second named to have 20 shares thereof making the total of 64 shares. In her fourth amended original petition filed on July 10, 1957, upon which plaintiff went to trial, she again sought the same relief against the same party defendants previously shown in her original petition, but she also therein pleaded an entirely separate cause of action against other party defendants therein named as W. T. Gillman and son, Buster L. Gillman, Beulah Gillman and her five children, namely, Dorothy Gillman, a feme sole, John F. Gillman, Billy M. Gillman, Leonard Carroll Gillman, H. B. Gillman and also against Travelers Oil Company, a Texas corporation, owned largely by the Gillmans, with W. T. Gillman president and a director of the company, John F. Gillman vice-president and a director, H. B. Gillman treasurer and a director, and Dorothy Gillman a director and bookkeeper for the company. W. T. Gillman was a brother of Myron Gillman, deceased, and Beulah Gillman was the widow of J. L. Gillman, deceased, also a brother of Myron Gillman, and the other named Gillmans were a niece and nephews of Myron Gillman. As against the latter named defendants, plaintiff sought in several alternative pleas to cancel and set aside the terms of two separate contracts, the first being of date September 29, 1953, signed by her husband, Myron Gillman, during his lifetime, by herself and Beulah Gillman, W. T. Gillman and wife, Lola Gillman, and by the previously named children of Beulah Gillman and W. T. Gillman, and likewise seeking to cancel and set aside the terms of a second contract, it being a compromise property agreement revoking the former contract of date September 29, 1953, the said compromise agreement

having been executed by signing two instruments simultaneously of date November 4, 1954 (after the death of plaintiff's husband, Myron Gillman on or about January 24, 1954) and signed by plaintiff herein, Bessie Mae Gillman individually and as independent executrix of the estate of Myron Gillman, deceased, and her daughter, Beatrice Thoyts joined by her husband, Dave E. Thoyts, as parties of the third part to the compromise agreement and by Beulah Gillman and her five previously herein named children as parties of the second part to the said agreement and by W. T. Gillman and son Buster L. Gillman as parties of the first part to the said agreement. Other party defendants in the suit, M. Cadie Gillman and Lula Morgan and husband, Jim Morgan, named in the first alleged cause of action, did not sign any of the three instruments sought here to be cancelled and set aside and therefore have no material interest in the second alleged cause of action and the party defendants named in the second alleged cause of action have no material interest in the first alleged cause of action.

To the first alleged cause of action, plaintiff's daughter, Beatrice Thoyts and husband, D. E. Thoyts, and the son of Beatrice Thoyts by a former marriage, Larry Gene Graham, joined issues with plaintiff by filing a general denial but sought no relief against anybody. Other party defendants thereto, M. Cadie Gillman, Lula Morgan and husband, Jim Morgan, answered admitting the death of Myron Gillman as alleged by plaintiff and that he left his will duly executed bequeathing to M. Cadie Gillman 44 shares of stock and Lula Morgan 20 shares of stock as therein shown and then joined issues with plaintiff by filing many special exceptions, followed by a general denial of her alleged grounds for recovery and claimed ownership of the 64 shares of stock involved, together with the dividends declared thereon since the death of testator Myron Gillman, for all of which they also sought recovery in a cross action so asserted and filed.

To the second alleged cause of action defendants, W. T. Gillman and son Buster L. Gillman and Beulah Gillman and her five previously named children, each being joined by a spouse if there be any, joined issues with plaintiff by first excepting to many of her allegations, then admitting the death of Myron Gillman as alleged by plaintiff and the execution of the contracts of dates September 29, 1953 and November 4, 1954 but denying appellant's alleged grounds for cancelling them and setting them aside.

Defendant Travelers Oil Company filed its answer and bill of interpleader excepting to plaintiff's allegations, denying that it knew that plaintiff was claiming ownership of the 64 shares of stock in question and the dividends therefrom until she filed her original petition on April 19, 1956, then asserting its claims as a third party beneficiary under the terms of that part of the written compromise property agreement of the parties thereto of date November 4, 1954 wherein the terms of the previous contract executed by the parties of date September 29, 1953 were cancelled and revoked and the respective interest owned stock in Travelers Oil Company of all parties were therein agreed upon; that it held dividends upon the said 64 shares of stock in the sum of $3,072 which sum it deposited in the registry of the trial court to be paid to the rightful owner thereof by the court, for all of which reasons the said defendant, as a stakeholder, sought recovery of a reasonable attorney fee in the sum of $1,250.

The record reveals that on September 27, 1957, a stipulation was agreed upon between plaintiff Bessie Mae Gillman, individually and as independent executrix of the will and estate of Myron Gillman, deceased, defendants Beatrice Thoyts and husband Dave Thoyts, and Larry Gene Graham and defendant Travelers Oil Company, to the effect that the first named parties plaintiff and defendants do not assert any kind or character of claim or cause of

action in this suit against defendant Travelers Oil Company and that the said first named parties do not seek or ask for any affirmative relief of any kind or character in this suit against Travelers Oil Company but that the said plaintiff, individually and as independent executrix of the will and estate of Myron Gillman, deceased, made Travelers Oil Company a party defendant to the suit in the belief at the time that it was a necessary party to the suit. It was further stipulated and agreed that the said stipulation agreed upon was between these named parties only and that such does not constitute a waiver of plaintiff's claims against all other defendants.

On September 16, 1957, the case went to trial before a jury with all parties and their counsel respectively present. At the close of the evidence and on September 27, 1957, plaintiff, individually and as independent executrix of the will and estate of Myron Gillman, deceased, filed her motion for an instructed verdict, which was overruled by the trial court. All party defendants to both alleged causes of action, except Beatrice Thoyts and husband, Dave E. Thoyts, and Larry Gene Graham, filed motions on September 27, 1957, for an instructed verdict, the Travelers Oil Company filing a separate motion from that filed by the other defendants, alleging that it had then tendered into the registry of the trial court the total sum of $4,096 representing dividends on the 64 shares of stock in question, to which stock the said defendants made no claim of ownership and the said defendant there sought recovery of $1,250 attorney fees as a stakeholder. The trial court sustained the separate motions of the said defendants and under its direction a verdict was accordingly returned upon which its judgment was accordingly rendered for said defendants and against plaintiff, who perfected an appeal.

The judgment of the trial court, after overruling all exceptions and disposing of all other preliminary matters, denied plaintiff, Bessie Mae Gillman, individually and as independent executrix of the will and estate of Myron Gillman, deceased, any relief as against any of the named defendants. The judgment likewise denied defendants Beatrice Thoyts and her husband, D. E. Thoyts, and her son by a former marriage, Larry Gene Graham, any relief as against any other party, although they did not seek any relief against any of the parties and have not perfected an appeal from the trial court's judgment. The judgment by reason of the will of Myron Gillman, deceased, making such a provision, awarded defendant, M. Cadie Gillman, title and ownership of 44 shares of capital stock in question, together with her proportionate part of the accumulated dividends shown since the death of testator, and for the same reason awarded Lula Morgan joined by her husband, Jim Morgan, title and ownership of 20 shares of the said capital stock, together with her proportionate part of the accumulated dividends thereon since the death of testator. Travelers Oil Company was adjudged and declared to be a stakeholder of the sum of $4,096 as dividends declared upon the 64 shares of stock in question, which sum was paid into the registry of the court, and as such stakeholder it was awarded attorney fees in the sum of $1,250, found to be a reasonable sum for services rendered, payable out of the said sums deposited into the registry of the court, but defendants M. Cadie Gillman and Lula Morgan joined by her husband, Jim Morgan, were awarded judgment against plaintic Bessie Mae Gillman, individually and as independent executrix of the will and estate of Myron Gillman, deceased, a proportionate share of the sum of $1,250, the same being the sum paid out as attorney fees to Travelers Oil Company and all other court costs were adjudged against the said plaintiff individually and as independent executrix of the will and estate of Myron Gillman, deceased.

By reason of the appeal by appellant as against the named defendants in each of her separate alleged causes of action and by reason of the said defendants having

filed a reply brief to appellant's brief discussing the questions raised in each alleged cause of action separately, we find two separate sets of appellees consequently the said appellees will be hereinafter referred to as M. Cadie Gillman, et al., parties to the first alleged cause of action, and as appellees W. T. Gillman, et al., parties to the second alleged cause of action.

Appellant has not separated the two alleged causes of action in her brief, but for various reasons, she charges that the trial court committed error in overruling her motion for an instructed verdict and in sustaining the motions of appellees for an instructed verdict. She charges in effect that the entire transaction constitutes a constructive fraud against appellant; that the instrument of date September 29, 1953, was not enforceable and that the purported compromise agreement of date November 4, 1954, should be cancelled and set aside because of mutual mistake; that if the terms of the instrument executed on September 29, 1953 were valid and binding, then there was an ademption of the 64 shares of stock bequeathed to his sisters by Myron Gillman, deceased; that if appellant was not entitled to an instructed verdict, then there were material issues of fact which should have been submitted to the jury; and that in any event it was error to render judgment against appellant for the attorney fees awarded to Travelers Oil Company.

The record is long, consisting of a transcript of 209 pages and a statement of facts covering 1005 pages. The briefs are lengthy, raising many questions concerning the matters presented. We shall endeavor to pass upon the controlling questions presented fully but as briefly as the record will justify and in the order we deem best without discussing all of the many questions raised separately.

The record reveals that, at the request of Myron Gillman, Hon. Ray Johnson, attorney at law, prepared his last will which he executed on July 24, 1944; that the language therein used reveals that all property.

standing in the testator's name was community property between himself and his wife, Bessie Mae Gillman, whom he named as independent executrix thereof; that he named as beneficiaries therein his wife, her daughter, Mrs. Beatrice Thoyts, Larry Gene Graham, a son of Beatrice Thoyts by a former marriage, and his two sisters, M. Cadie Gillman and Mrs. Lula Morgan; that among other property therein mentioned there were 164 shares of capital stock in Travelers Oil Company standing in testator's name, of which he bequeathed 44 shares to his sister, M. Cadie Gillman, 20 shares to his sister, Mrs. Lula Morgan, and 18 shares to his wife, Bessie Mae Gillman, thus disposing of only one-half, or his community interest, in the 164 shares of stock; that after the payment of all debts and other expenses therein directed and after the deduction of the special bequests theretofore made, he bequeathed to his wife, Bessie Mae Gillman, all the rest and residue of his estate. Testator confided the foregoing contents of his will to Hon. Walter Russell, attorney at law, who likewise represented him during his life time.

Appellant herein, individually and as independent executrix of the will and estate of Myron Gillman, deceased, pleaded the execution of the will by her late husband, its terms and his death on January 24, 1954, the admission of his will to probate, her qualifications as independent executrix thereunder, the payment of all debts of the estate and the performance of all other administrative duties except the distribution of the assets to those persons lawfully entitled to receive the same. However, it conclusively appears from the record that nothing has been left undone in carrying out the terms of testator's will but the delivery of the 64 shares of stock to his sisters therein named as beneficiaries. It further appears that testator's will has been admitted to probate by a final judgment entered upon the application of appellant herein. The validity of the will has not been challenged but on the contrary has been declared upon by appellant who offered the-

will for probate, who has accepted benefits under its terms, yet she seeks in effect by this action to nullify and set aside portions of the said will that provide benefits for the said sisters of the testator. Appellant herein as independent executrix of the will and estate of her deceased husband furnished the appraisers of the estate a list of the community property, among which are 164 shares of Travelers Oil Company common stock which were valued at $49,200 or $300 per share. The said inventory and appraisement likewise reveals that the total value of the community estate was $114,-346.65, making the value of the testator's one-half interest therein $57,173.32. The record further reveals that the total funds and property passing to appellant, Bessie Mae Gillman, under the provisions of the will of her deceased husband from his one-half of the community interest, according to the inheritance tax statement, was valued at $32,772.59 and a calculation reveals that the stock of Travelers Oil Company was valued at $300 per share.

On or about May 25, 1953, the stockholders of Travelers Oil Company authorized the company to borrow money and buy all of the stock possible from minority stockholders as a result of which the company acquired 379 shares of stock at $300 per share and the said 379 shares were reduced and held as company treasury stock. Thereafter on September 1, 1953, the board of directors of the company declared the 379 shares to be a stock dividend to the stockholders then of record. Thereafter the contract of date September 29, 1953 was executed recognizing the number of shares of stock each stockholder then owned and in addition purporting to divide proportionately the said company-owned treasury stock among the stockholders to be effective when the purchase loan thereof was paid off and liquidated but this instrument was revoked and superseded by the compromise agreement thereafter executed by the same parties on November 4, 1954.

■ The record conclusively reveals that appellant and her husband, Myron Gill-

man, owned as community property standing in his name, the 164 shares of stock at the time he executed his will on July 24, 1944, at the time he and she joined in executing the contract of date September 29, 1953, and at the time of his death on January 24, 1954. There was never an ademption of the 64 shares of stock Myron Gillman bequeathed to his sisters, and he had a right under this record to dispose of his community interest in the 164 shares of stock as he saw fit. Long v. Long, 133 Tex. 96, 125 S.W.2d 1034; Bell v. Bell, Tex.Civ. App., 248 S.W.2d 978; In re Gray's Estate, Tex.Civ.App., 279 S.W.2d 936.

■ The record reveals conclusively that appellant had elected to take under the terms of the will of her deceased husband and, having done so with full knowledge of its provisions, she was then estopped to attack or contest other provisions of the will naming testator's sisters as beneficiaries. Since appellant has, according to her own pleadings and admissions, elected to take under the will she must accept its burdens as well as its benefits. Dakan v. Dakan, 125 Tex. 305, 83 S.W.2d 620; Edsall v. Hutchings, Tex.Civ.App., 143 S.W. 2d 700 (writ refused); Wright v. Wright, 154 Tex. 138, 274 S.W.2d 670.

■ The rule is well stated in 97 C.J.S. Wills § 1237, p. 9, in the following language:

"The principle is that one shall not take any beneficial interest under a will, and at the same time reject its adverse provisions, or set up any right or claim of his own, even if legal and well founded, which would defeat or in any way prevent the full effect and operation of every part of the will, or that he who accepts a benefit under a will must adopt the whole contents of the instrument, conforming to all its provisions and renouncing every right inconsistent with it."

In support of that rule there stated we find many authorities cited from various jurisdictions including Texas.

■ It appearing that appellant has caused a final judgment to be entered probating the will and that all terms of testator's will have been carried out except for the bequest made to appellees M. Cadie Gillman et al., they have sought by a cross action filed in this suit to enforce that part of testator's will bequeathing to them the 64 shares of stock in question and we believe they have conclusively shown their right to such recovery. Therefore, under the record and the law as we understand it, the trial court was justified in directing a verdict on behalf of appellees M. Cadie Gillman et al. on their cross action and rendering judgment for them declaring them to be the owners of the 64 shares of stock bequeathed to them by their brother, Myron Gillman, deceased, as well as the dividends that have accumulated since the death of testator.

Concerning the appeal from that part of the trial court's judgment denying appellant any recovery in her second alleged cause of action as against appellees, W. T. Gillman et al., appellant seeks to cancel and set aside the compromise agreement of date November 4, 1954, which revoked the first contract of date September 29, 1953. However, she contends that the first contract was not enforceable. The compromise contract provided in part that because the parties thereto desired to amicably settle all of their differences that had arisen between them it was agreed, upon a consideration of mutual promise and other valuable considerations expressed, that the contract of date September 29, 1953, be and it was cancelled and held for naught; that the shares of stock be and they were distributed among the parties thereto respectively as agreed upon, after which the contract was concluded with the following language and signed by all parties of date November 4, 1954:

"The Parties hereto agree that by reason of the covenants mutually entered into that they each do hereby release the other of and from all causes of action, damages, suits, or costs, whatsoever, by reason of the occurrence of any event happening up to this date, and it is further agreed that this release shall inure to the benefit of the Travelers Oil Company, a Texas Corporation."

The evidence reveals that appellant was still serving as independent executrix of the estate of Myron Gillman, deceased, when the compromise contract was executed and signed and appellant signed the same individually and as such executrix. The evidence further reveals that shares of stock belonging to appellant and the estate of Myron Gillman, deceased, remained the same in both contracts, that is, 190.615 shares.

The evidence conclusively reveals that all of the shares of stock for the various parties was fully recognized and that the dividend stock previously herein mentioned was immediately distributed among the parties as provided for in the contract; that all of the parties faithfully observed and performed under the terms and conditions of the compromise contract until this suit was filed by appellant about one and one-half years later; that all parties including appellant have held the shares of stock distributed among them under the terms of the compromise contract and have collected dividends on them accordingly; and that the material change made in the compromise agreement of date November 4, 1954, as compared with the previous contract of date September 29, 1953, was that the shares of stock belonging to the five named children of Beulah Gillman were each reduced 6.335 shares or from 55.446 shares to 49.111 shares in the compromise agreement making a total reduction of 31.676 shares, which shares under the terms of the compromise agreement were given to appellant's daughter, Beatrice Thoyts, who had no shares under the terms of the first contract of date September 29, 1953.

It seems that appellant contends that the compromise agreement guaranteed to her

190.615 shares of stock, but in the alternative, if such not be true, then she is entitled to have the compromise agreement cancelled and set aside by reason of mutual mistake or by reason of fraud.

Of the 379 shares of dividend stock previously herein mentioned, Myron Gillman's proportionate share thereof was 100.090 shares as shown by the terms of the first contract executed, but he, joined by his wife, appellant herein, gave 73.475 shares thereof to his niece and nephews herein named, just as W. T. Gillman and Beulah Gillman also gave to them some of their divided stock shares, and stock dividends for such shares were issued to the recipients thereof, which left Myron Gillman only 26.615 shares of the dividend stock which stock, together with his 164 shares already owned, gave him a total of 190.615 remaining shares, which number of shares remaining were recognized and approved by Myron Gillman and his wife, Bessie Mae Gillman, appellant herein, when they joined the other parties in executing the contract of date September 29, 1953, and the same was again recognized and approved by appellant, Bessie Mae Gillman, both individually and as independent executrix after her husband died when she joined the other parties in executing the contract of date November 4, 1954. The preamble of the contract of date September 29, 1953, does not contain the name of appellant herein, but she wanted to sign it and was permitted to sign it, although her husband, Myron Gillman, was named in the preamble and had signed it, thus making the same binding whether she as his wife signed it or not. In any event, appellant is entitled only to the shares of stock shown by the record presented here to belong to her and the estate of her deceased husband, less the 64 shares bequeathed by her husband to his sisters, M. Cadie Gillman and Lula Morgan, who were not parties to the compromise agreement and who cannot be deprived of their rights by such agreement.

■ Appellant contends in support of her charge of mutual mistake that she and the other parties to the compromise agreement had been erroneously advised by her then attorney, Walter Russell, to the effect that the first contract of date September 29, 1953, was enforceable and believing such to be true she signed the compromise agreement. Appellees, W. T. Gillman et al., contend that the first contract of date September 29, 1953, was enforceable and that Walter Russell had correctly so advised them. Appellant further contends in support of her charge of mutual mistake that when she signed the second contract of date November 4, 1954, she thought such would give her authority to bind the estate of Myron Gillman, deceased, including the 64 shares of stock her deceased husband had bequeathed to his sisters and that she signed the compromise agreement believing such would give her such authority. However, we find no basis either in fact or in law that would bind all parties because of her misconception about this matter.

The record reveals that appellant and her daughter, Beatrice Thoyts, carefully considered the compromise agreement before signing it and that appellant knew all of the material facts there involved before she voluntarily signed the agreement. We find no basis for any issues of mutual mistake of fact, although Walter Russell had advised appellant and others that the first contract of date September 29, 1953, was enforceable and that appellant decided later that it was not enforceable. Such did not constitute a mutual mistake of fact since the evidence conclusively reveals that her adversaries thought then and still believe the first contract was enforceable. Since the same has been revoked by the parties who made it and superseded by another contract, it is not now material whether the first contract was enforceable or not. However, we believe after examining it that until it was revoked it was enforceable as against appellant herein in any event.

■ Concerning appellant's charges of fraud, she did not specifically allege fraud,

but if under a liberal construction of her pleadings, an allegation of fraud has been pleaded, such has been pleaded only as against her former attorney, Walter Russell, who was also attorney for her husband during his lifetime. Appellant contends that for approximately 10 years after her husband executed his will and before he died, she did not know that he had bequeathed the 64 shares of stock to his sisters; that she first learned of such when they read the will next day after her husband was buried; that Walter Russell knew about such a provision in the will for sometime but never divulged such to her. Walter Russell testified and such was not controverted in any way, that such was a confidential matter between him and his client and he was not permitted to reveal the contents of the will made by Myron Gillman to anybody. Appellant likewise contends that Walter Russell helped to perpetrate a fraud upon her when he erroneously advised her that the first contract of date September 29, 1953, was enforceable and also when he failed to advise her that the signing of the second contract of date November 4, 1954, by her did not give her authority to bind the whole estate of Myron Gillman including the 64 shares of stock bequeathed by him to his sisters. These matters must be determined against appellant's contentions as a matter of law and we find no material issues of fact on fraud or mutual mistake to be submitted in any event.

Appellant further contends that her husband verbally told her on or about the date he signed the first contract of date September 29, 1953, that he was leaving all of his property to her, but upon objections of her adversaries to her so testifying because of Article 3716, Vernon's Ann.Civ. St., known as "The Dead Man's Statute," her testimony concerning such a statement was limited in effect by the trial court only as such may affect her interest individually and not admitted as it may affect her interest as administratrix or a beneficiary under the will of Myron Gillman. According to the record it seems that, in any event, if appellant was deceived by anybody, it was by her husband during his lifetime. However, since she elected to take under his will after she had been fully aware of all of the facts and circumstances, she has waived any right to complain about the matter and should not now be heard to complain about the failure of her husband or anyone else to previously apprise her of the 64 shares of stock given by testator as a bequest to his sisters.

It appears that appellant, joined by her daughter, Beatrice Thoyts, who was not a party to the first contract of date September 29, 1953, since she had no material interest in the subject matter there involved, demurred and objected to the final consummation of the contract, which brought about an apparent family bona fide dispute since all of the parties are related, with appellant herein, her said daughter and husband, D. E. Thoyts, and appellant's grandson, Larry Gene Graham, on one side of the controversy and W. T. Gillman and Beulah Gillman and their previously herein named children on the other side, the principal contentions being made that Beatrice Thoyts had not been given any shares of stock by the terms of the first contract of date September 29, 1953, and appellant also seemed to construe the provisions of the will of her deceased husband, giving appellant "all the rest and residue of my estate" more broadly than such language was construed by appellees, W. T. Gillman et al. Because of such differences of opinion the said parties cautiously, deliberately and in good faith reached a family compromise agreement joined therein by appellant's daughter, Beatrice Thoyts and husband, Dave E. Thoyts, whereby each of the five previously named children of Beulah Gillman agreed to reduce their shares of stock 6.335 shares respectively making a total of 31.676 shares of stock, which number of shares were by agreement of the parties given to Beatrice Thoyts. It was further agreed that the total number of

shares of stock belonging to the estate of Myron Gillman and appellant, Bessie Mae Gillman, would remain 190.615, the same as were agreed upon in the first contract of date September 29, 1953, but such agreement in no way resulted in an ademption of the 64 shares of stock bequeathed by Myron Gillman to his sisters.

In the recent case of Iden v. Ackerman, Tex.Civ.App., 280 S.W.2d 643, 647 (writ refused), the Court said in part:

> "The evidence, in our opinion, shows a bona fide dispute between the parties which was in good faith compromised and settled by an agreement giving appellees only a portion of that which they claimed. It was a family settlement and such settlements are favored in law and equity * * *
>
> "The doubt or mistaken belief which appellants had about the title to the land because of their mistake or ignorance concerning the law is under the circumstances in this case no ground for rescission or cancellation of the compromise agreement. 9 Tex. Jur. 349; 15 C.J.S. Compromise and Settlement § 36, p. 757; Bartlett Oil Mill Co. v. Cappes, 54 Tex.Civ.App. 354, 117 S.W. 485; Taylor v. Taylor, Tex.Civ.App., 54 S.W. 1039, 1049; Loggins v. Stewart, Tex.Civ.App., 218 S.W.2d 1011 (Err.Ref.)."

The rules there announced are strongly supported by the case of Wedegartner v. Reichert, Tex.Civ.App., 218 S.W.2d 304, which case cites numerous authorities in support of the rules announced.

■ Much has been written concerning the validity of compromise contracts such as we have before us. It is said in 9 Tex. Jur. 335–336, Para. 3:

> "It is the policy of the law to discourage litigation; and hence the settlement of controversies by compromise is approved by the courts, being favored both at law and in equity. Contracts of compromise are sustained on the ground that they are not only beneficial in themselves, but conducive to peace and harmony. Consequently, in the case of a right which is doubtful or which is controverted, or where the object is to avoid or settle litigation, a compromise duly executed will be upheld if it appears that the parties have acted in good faith, and there is nothing to show fraud or misrepresentation."

■ Long ago in the case of Camoron v. Thurmond, 56 Tex. 22, 34–35, the Supreme Court said in part:

> " 'An agreement entered into upon a supposition of right or of a doubtful right, though it often comes out that the right was on the other side, shall be binding, and the right shall not prevail against the agreement of the parties, for the right must always be on one side or the other, and therefore the compromise of a doubtful right is a sufficient foundation of an agreement' * * * 'It is clear that when parties enter into a compromise or family arrangement in order to avoid litigation, the question as to whether one of the parties is entitled to certain property or not, such compromise will not be set aside, although it should eventually turn out that the party taking something under the compromise was in reality legally entitled to nothing.' "

The rules there announced have been consistently followed. Taylor v. Taylor, Tex. Civ.App., 54 S.W. 1039, 1049–1050; O'Fiel v. Janes, Tex.Civ.App., 269 S.W. 1074, 1082, affirmed Tex.Com.App., 280 S.W. 163; J. Kahn & Co. v. Clark, 5 Cir., 178 F.2d 111–114; Commercial Credit Co., v. Ramsey, Tex.Civ.App., 138 S.W.2d 191, 194; Allstate Ins. Co. v. Lay, Tex.Civ.App., 265 S.W.2d 203, 207; Gilliam v. Alford, 69 Tex. 267, 6 S.W. 757, 759. In the last case cited the court said in part:

"The rule in such cases is that 'voluntary settlements are so favored that if a doubt or dispute exists between parties with respect to their rights, and all have the same knowledge, or means of obtaining knowledge, concerning the circumstances involving those rights, and there is no fraud, misrepresentation, concealment, or other misleading incident, a compromise into which they have voluntarily entered must stand and be enforced, although the final issue may be different from that which was anticipated, and although the disposition made by the parties in their agreement may not be that which the court would have decreed had the controversy been brought before it for decision.'"

▇▇ In the case of Little v. Allen, 56 Tex. 133, 138, the court said, "A mutual agreement for compromise is in itself a valuable consideration." It is our opinion that the compromise agreement before us was entered into by all parties in good faith, without the existence of fraud or misrepresentations and with all of the material facts concerning such being available to all parties, hence the rules of law previously herein cited are controlling here.

▇▇ It appearing that no material fact issues have been raised and that the questions presented are determined by law in support of the validity of the compromise agreement executed by the parties of date November 4, 1954, it is our opinion that the trial court was justified in instructing a verdict for appellees, W. T. Gillman et al.

▇▇ Concerning the charge of an unjust judgment having been rendered against appellant for the amount of attorney fees in the sum of $1,250, such sum was awarded defendant Travelers Oil Company as a stakeholder, payable out of the funds paid into the registry of the court by the said company, which funds the court concluded and found to belong to appellees, M. Cadie Gillman et al., for which reasons the court awarded judgment for the said appellees as against appellant for the sum of $1,250. The record reveals that originally Travelers Oil Company was not made a party to this suit but on June 20, 1957, appellant made and filed application for a postponement or continuance of the case until she could make the said Travelers Oil Company a party defendant because of alleged reasons therein stated. Thereafter on July 10, 1957, appellant filed her fourth amended original petition making Travelers Oil Company a party defendant and alleging as a cause of action against it the recovery of the 64 shares of stock in question, together with certain dividends declared thereon. Thereafter on July 26, 1957, defendant, Travelers Oil Company, answered showing it made no claim of ownership of the 64 shares of stock, but because of the conflicting claims of ownership of the 64 shares of stock made by the various adversaries, it was paying into the registry of the court certain dividends declared on the 64 shares of stock to be paid by the court to the proper owner thereof, for which reason it sought judgment for the sum of $1,250 as a reasonable attorney fee for its services rendered as a stakeholder. On September 27, 1957, after the case had been called for trial and the evidence heard but before judgment had been rendered, appellant agreed in a stipulation filed that she as an individual or as independent executrix had no kind or character of a claim or cause of action against defendant, Travelers Oil Company, and was not asking in either capacity for any kind of affirmative relief against the said defendant but that she had made the said defendant a party to the suit in the belief then that it was a necessary party to the suit. It therefore appearing that defendant, Travelers Oil Company, was admittedly made a party to the suit by appellant only as a mere stakeholder and interpleader, it is our opinion that the trial court was justified, under the record before us, in awarding the said defendant an attorney fee of $1,250 to be finally adjudged.

against appellant individually and as executrix. Nixon v. Malone, 100 Tex. 250, 98 S.W. 380, 99 S.W. 403; Employers' Casualty Co. v. Rockwall County, 120 Tex. 441, 35 S.W.2d 690, 38 S.W.2d 1098; Wilke v. Finn, Tex.Com.App., 39 S.W.2d 836; Comer v. Farrell, Tex.Civ.App., 48 S.W.2d 452, 455; 25 Tex.Jur. 62, Para. 11.

A careful examination of the record and the briefs of the parties reveals no reversible error committed. Therefore, appellant's points to the contrary are all overruled and the judgment of the trial court is affirmed.